LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiff, FLSA Collective*
*Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**

---

ASHLEY HARRIS and LITA FILLIPO,
*on behalf of themselves, Nationwide FLSA*
*Collective Plaintiffs and the Class*,

                Plaintiff,

      v.

THE ANTHEM COMPANIES, INC.

              Defendant.

---

Case No.:

**CLASS AND COLLECTIVE**
**ACTION COMPLAINT**

Plaintiffs ASHLEY HARRIS and LITA FILLIPO ("Plaintiffs"), on behalf of themselves and others similarly situated, by and through her undersigned attorneys, hereby files this Class and Collective Action Complaint against Defendant, THE ANTHEM COMPANIES, INC. ("Defendant"), and state as follows:

## INTRODUCTION

1.     Plaintiff ASHLEY HARRIS and LITA FILLIPO allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§ 201 *et seq.* ("FLSA"), that they and others similarly situated are entitled to recover from Defendant: (1) unpaid wages including unpaid overtime compensation, (2) liquidated damages and (3) attorneys' fees and costs.

2.      Plaintiff ASHLEY HARRIS alleges, pursuant to the Virginia Minimum Wage Act ("VMA"), VA Code § 40.1-22 *et seq.*, VA Code § 40.1-29; and VA Code § 40.1-28.7:7., that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages including unpaid overtime compensation, (2) statutory penalties, (3) liquidated damages and (4) attorneys' fees and costs.

3.      Plaintiff LITA FILLIPO also alleges, pursuant to the Indiana Statutory Wage Law ("ISWL"), Ind. Code § 22-2 *et seq.*, that she and others similarly situated are entitled to recover from Defendant: (1) unpaid wages including unpaid overtime compensation, (2) statutory penalties, (3) liquidated damages and (4) attorneys' fees and costs.

4.      Plaintiffs and potential class members were all victims of Defendants' scheme to underpay employees and avoid paying overtime.  Plaintiffs bring this wage and hour class action on behalf of themselves and all persons, who during the applicable limitations period up to and including the present (the "Class Period"), were similarly underpaid by Defendants in violation of protections afforded under Virginian law, Indiana law, and the laws of the other states and the District of Columbia:

1) Alaska Wage and Hour Act, Alaska Statute §23.10.050 *et seq.*;

2) Arizona Fair Wages and Healthy Families Act, A.R.S. § 23-340 *et seq.*, and the Arizona Minimum Wage Act Practice and Procedure A.A.C. R20-5-1201 *et seq.*;

3) Arkansas Minimum Wage Act, Ark. Code Ann. § 11-4-201, *et seq.*;

4) California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200-17210; and the California Labor Code and relevant Industrial Welfare Commission Wage Order;

5) Colorado Wage Claim Act, Colo. Rev. Stat. § 8-4-101 *et seq.,* and the Colorado Minimum Wage Act, Colo. Rev. Stat. § 8-6-101 *et seq.*;

6) Connecticut Wage Act Conn. Gen. Stat. §§31-58, *et seq.*;

7) Delaware Minim Wage Law, Delaware Code Title 19-90 *et seq.*;

8) District of Columbia Minimum Wage Act Revision Act, D.C. Code § 32-1001 *et seq.*;

9) Florida's Unpaid Wages Statute, Fla. Stat. 448.08 *et seq.*;

10) Georgia Minimum Wage Law, Official Code of Georgia Annotated O.C.G.A. § 34-4 *et seq.*;

11) Hawaii Payment of Wages and other Compensation, Hawaii Revised Statutes Title 21 § 388-1 *et seq.*;

12) Idaho the Minimum Wage Law 44-1501 *et seq.*, Hours Worked Act §44-1201 *et seq.*, and the Liens, Mortgages and Pledges, Idaho Code § 45-601 *et seq.*;

13) Illinois Labor Laws, 820 ILCS 105 *et seq.*;

14) Indiana Wages Hours and Benefits, Ind. Code §22-2-2 *et seq.* Indiana Frequency of Wage Payments Ind. Code §22-2-5 *et seq.*;

15) Iowa Wage Payment Collection Law, Iowa Code §91A *et seq.*;

16) Kansas Labor and Industries Law, Kan. Stat. Ann. §44-1201 *et seq.*;

17) Kentucky Wage Statutes, K.Y. Rev. Stat. Ann. §§ 337.275 *et seq.*;

18) Louisiana's Wage Payment Act, Louisiana Revised Statutes §23:631 *et seq.*;

19) Maine Employment Practices Act, 26 Me. Rev. Stat. §§ 621-A, 626, 626-A, & 629, and the Maine Minimum Wage and Overtime Law, 26 Me. Rev. Stat. §§ 664 & 670;

20) Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3-401 *et seq.*, and the Maryland Wage Payment Collection Law, Lab. & Empl. § 3-501 *et seq.*;

21) Massachusetts Minimum Fair Wage Law, Mass. Gen. L. ch. 151, §1A *et seq.*;

22) Michigan Workforce Opportunity Wage Act, MCL §§ 408.411, *et seq.*;

23) Minnesota Fair Labor Standards Act, Minn. Stat. § 177.25, and the Minnesota Payment of Wages Act, Minn. Stat. § 181.101 *et seq.*;

24) Missouri Minimum Wage Law, Mo. Rev. Stat. §§ 290.500 *et seq.*;

25) Montana Minimum Wage and Overtime Compensation Act, MCA § 39-3-401 et seq., and the Montana Payment of Wages Law, MCA §39-3-201 *et seq.*;

26) Nebraska's Wage and Hour Act, Neb. Rev. Stat. § 48-1201 *et seq.*, and the Nebraska Wage Payment and Collection Act, Neb. Rev. Stat. § 48-1228 *et seq.*;

27) Nevada Minimum Wage Amendment of the Nevada Constitution, Nev. Const. art. 15, § 16, and the Nev. Rev. Stat. Chapt. 60,

28) New Hampshire Minimum Wage Law, N.H. Rev. Stat. § 279:1 *et seq.*;

29) New Jersey Wage Payment Law, N.J.S.A. §§ 34:11-4.1 *et seq.*; and the New Jersey Wage and Hour Law, N.J.S.A. §§ 34:11-56a *et seq.*;

30) New Mexico Minimum Wage Law, N.M. Stat. Ann. §50-4 *et seq.*;

31) New York Labor Law, Article 19 § 650 et seq., and Article 6 § 190 *et seq.*;

32) North Carolina Wage and Hour Act, N.C.G.S. § 95-25.1, *et seq.*;

33) North Dakota Labor and Employment Law., N.D. Cent. Code 34-01 *et seq.*, and the North Dakota Minimum Wage and Work Conditions Order N.D. Ain Code §4602-07-01 *et seq.*;

34) Ohio Minimum Fair Wage Standards Act, O.R.C. § 4111.01 *et seq.*;

35) Oklahoma General Wage Law, O.S. §§40-165.1. *et seq.*;

36) Oregon Minimum Wage Law, Oreg. Rev. Stat. §51-653, and the Oregon Rules Regulating Minimum Wage, Overtime and Working Conditions OAR 839-020-0000, *et seq.*;

37) Pennsylvania Minimum Wage Act 43 Pa. Cons. Stat. § 333.101 *et seq.*;

38) Puerto Rico Working Hours and Days Laws, 29 L.P.R.A. §§271, *et seq.*;

39) Rhode Island Minimum Wage Act, R.I. Gen. Laws §§ 28-12-1, et seq., and the Rhode Island Wages Act, R.I. Gen. Laws §§ 28-14-1, et seq.;

40) South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10 *et seq.*;

41) South Dakota Labor and Employment Laws, S.D.C.L. 60-1-1, *et seq.*;

42) Texas Minimum Wage Act, Texas Labor Code § 62.001 *et seq.*;

43) Vermont Wages and Medium of Payment Laws, 21 V.S.A. §§341, *et seq.*;

44) Virginia Minimum Wage Act, VA Code § 40.1 *et seq.*;

45) Washington Minimum Wage Act, R.C.W. 49.46.005, *et seq.*; and Washington Minimum Wage Rules, WAC 296-126 *et seq.*;

46) West Virginia Minimum Wage and Maximum Hours Act, W. Va. Code §25-5C-1, *et seq.*;

47) Wisconsin Hours of Work and Overtime Rules, Wis. Admin. Code, §§ DWD 272.01 et seq. and 274.01 *et seq.*; and

48) Wyoming Minimum Wages, W.S. 1977 §§27-4-201, et seq. and Collection of Unpaid Wages, §§27-4-501, *et seq.*

## JURISDICTION AND VENUE

5.    Defendant is subject to personal jurisdiction in this judicial district.

6.    This Court has subject matter jurisdiction over this controversy pursuant to 29 U.S.C. § 216(b), 28 U.S.C. §§ 1331, 1337, and has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

7.    Venue is proper in the Southern District pursuant to 28 U.S.C. § 1391.

8.    This Court is empowered to issue a declaratory judgement pursuant to 28 U.S.C. §§ 2201 and 2202.

## PARTIES

9.  Plaintiff ASHLEY HARRIS is a resident of Henrico County, Virginia.

10.  Plaintiff LITA FILLIPO is a resident of Porter County, Indiana.

11.  Defendant THE ANTHEM COMPANIES, INC. is a business corporation operating nationwide and organized under the laws of Indiana. Its principal executive office is located at 120 Monument Circle, Indianapolis, IN, 46204.

12.  Defendant operates a healthcare enterprise that provides programs and services to uninsured and underinsured individuals. Defendant maintains offices and hires employees throughout the entire United States, including offices in California (18), Georgia (1), Maine (1), New Hampshire (1), Virginia (9), Colorado (2), Indiana (3), Missouri (4), New York (4), Wisconsin (5), Connecticut (1), Kentucky (2), Nevada (2), Ohio (9).

13.  The Anthem Offices (the "Offices") share common central management, Human Resources team, central payroll, and central marketing team.

> a)  Each Office location is engaged in the same business of providing insurance sales services.
>
> b)  All the Offices share the same trade name "Anthem" with the same logo and are marketed jointly on one (1) common website: (https://anthem.com/). *See* **Exhibit A**.
>
> c)  Defendant THE ANTHEM COMPANIES, INC. holds itself out as the employer to Plaintiff, Nationwide FLSA Collective Plaintiffs, Class Members.
>
> d)  The Offices are commonly owned and operated by THE ANTHEM COMPANIES, INC. *See* **Exhibit B.**
>
> e)  All offices share the common "Individual & Family" Webpage, "Medicare" Webpage, "Medicaid" Webpage, "For Employers" Webpage, "For Producers" Webpage, "For Providers" Webpage, corporate office address, contacts, and a 1-800 number. *See* **Exhibit A**.
>
> f)  Job openings of Anthem in multiple states were posted on the same Webpage for prospective employees to apply. *See* **Exhibit C** for the "Careers" Webpage**.**

5

g) All Offices share common social media accounts, including: Facebook, located at https://www.facebook.com/AnthemBlueCrossBlueShield/; and Twitter, located at https://twitter.com/antheminc?lang=en. *See* **Exhibit D.**

h) All Employees of Defendants share common wage policies, many of which were found in a common handbook, which addressed both general wage policies with specifics relating to individual state laws. All employees are subject to Anthem's overtime policy set at the national level wherein employees are warned that unscheduled and/or unauthorized overtime may be subject to corrective actions such as termination.

i) Employees were employment policies, such as quotas, were all set by central management at a national level.  Policies, such quotas, were then enforced by regional managers such as Herman Rodriguez, who managed the "east region" for Defendant, encompassing employees' located within the States of Connecticut, New Hampshire, Maine, and New York.

14.    At all relevant times, the Defendant was and continues to be an "enterprise engaged in commerce" within the meaning of the FLSA, VMA, ISWL, the state laws within each state it employs workers, and the regulations thereunder.

15.    At all relevant times, the work performed by Plaintiff, Nationwide FLSA Collective Plaintiffs and Class Members was directly essential to the business operated by Defendant.

## NATIONWIDE FLSA COLLECTIVE ACTION ALLEGATIONS

16.    Plaintiffs bring claims for relief as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), on behalf of all non-managerial employees, who engaged or facilitated in the enrollment and/or recertification of clients (including but not limited to all non-managerial, Customer Service Representatives, Membership Enrollers, Sales Representative, Field Sales Representative, and Inside Sales Representative throughout the United States) employed by Defendant on or after the date that is three (3) years before the filing of the Complaint in this case as defined herein ("Nationwide FLSA Collective Plaintiffs").

17.    At all relevant times, Plaintiffs  and Nationwide FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions,

and are and have been subjected to Defendant's decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them the proper overtime compensation at the rate of one and one half times the regular hourly rate for work in excess of forty (40) hours per workweek and improperly classifying non-exempt employees as exempt. The claims of Plaintiffs stated herein are essentially the same as those of Nationwide FLSA Collective Plaintiffs.

18.    The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to the FLSA, 29 U.S.C. § 216(b). The Nationwide FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided to the Nationwide FLSA Collective Plaintiffs via first class mail to the last address known to Defendant.

## RULE 23 CLASS ALLEGATIONS

19.    Plaintiffs ASHLEY HARRIS and LITA FILLIPO bring claims for relief pursuant to the Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-managerial employees who engaged or facilitated in the enrollment and/or recertification of clients (including but not limited to all non-managerial, Customer Service Representatives, Membership Enrollers, Sales Representative, Field Sales Representative, and Inside Sales Representative throughout the United States)  employed by Defendants in the three (3) years, or the relevant statutory period of each state's applicable labor law if longer, prior to the filing of the Complaint in this case (the "Class Period").

20.    To the extent necessary, Plaintiff will designate subclasses for each of the States where Defendants have employees.

21.     All said persons, including Plaintiffs, are referred to herein as the "Class" or "Class Members." The Class Members are readily ascertainable. The number and identity of the Class Members are determinable from the records of Defendant. The hours assigned and worked, the position held, and the rates of pay for each Class Member are also determinable from Defendant's records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by means permissible under F.R.C.P. 23.

22.     The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently within the sole control of Defendant, there is no doubt that there are more than forty (40) members of the Class. The members of potential subclass employees total over forty (40) in each of the States where Defendants' have employees, including the States of: California, Georgia, Maine, New Hampshire, Virginia, Colorado, Indiana, Missouri, New York, Wisconsin, Connecticut, Kentucky, Nevada, Ohio.

23.     Plaintiffs' claims are typical of those claims, which could be alleged by any member of the Class, and the relief sought is typical of the relief, which would be sought by each member of the Class in separate actions. All the Class Members were subject to the same corporate practices of Defendant, as alleged herein, of improperly classifying non-exempt employees as exempt, failing to pay overtime compensation, failing to provide proper wage statements, and failing to provide proper wage and hour notices. Defendant's corporate-wide policies and practices affected all Class Members similarly, and Defendant benefited from the same type of unfair and/or

wrongful acts as to each Class Member. Plaintiffs and other Class Members sustained similar losses, injuries and damages arising from the same unlawful policies, practices and procedures.

24.     Plaintiffs are able to fairly and adequately protect the interests of the Class and has no interests antagonistic to the Class. Plaintiff is represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiff in wage and hour cases.

25.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual Class Members lack the financial resources to vigorously prosecute a lawsuit against a corporate defendant. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because losses, injuries and damages suffered by each of the individual Class Members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class Members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendant and resulting in the impairment of Class Members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided

by means of common, class-wide proof. In addition, if appropriate, the Court can, and is empowered to, fashion methods to efficiently manage this action as a class action.

26.    Defendant and other employers throughout the United States violate state labor laws. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide Class Members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

27.    There are questions of law and fact common to the Class which predominate over any questions affecting only individual Class Members, including:

    (a)    Whether Defendant employed Plaintiffs and Class Members within the meaning of each state's labor laws;

    (b)    What are and were the policies, practices, programs, procedures, protocols and plans of Defendant regarding the types of work and labor for which Defendant did not pay the Class Members properly;

    (c)    At what common rate, or rates subject to common methods of calculation, was and are Defendant required to pay Plaintiffs and Class Members for their work;

    (d)    Whether Defendant properly notified Plaintiffs and Class Members of their pay rates;

    (e)    Whether Defendant paid Plaintiffs and Class Members the proper overtime compensation;

(f)     Whether Defendant misclassified Plaintiffs and Class Members as exempt from overtime;

(g)     Whether Defendant provided proper wage statements to Plaintiffs and Class Members; and

(h)     Whether Defendant provided proper wage and hour notices to Plaintiffs and Class Members.

## STATEMENT OF FACTS

*Plaintiff ASHLEY HARRIS Claims*

28.     In or about June 2007, Defendant hired Plaintiff ASHLEY HARRIS to work as a Membership Enrollment Specialist in Anthem's Office located at 2015 Staples Mill Rd., Richmond VA 23230.  Plaintiff HARRIS's employment with Defendant ended in or around April 2019.  In April of 2019, at the end of Plaintiff ASHLEY HARRIS's employment, Defendant paid Plaintiff HARRIS $18.51 an hour plus a quarterly commission.

29.     Plaintiff HARRIS assisted in the enrollment and approval process for Defendant's private Group Enrollment Healthcare plans.  Defendant's private Group Enrollment Healthcare plans were offered to large facilities such as schools and businesses.

30.     Defendant has at all times instituted quotas for employees regarding sales and/or for the completion and submission of enrollment applications for each individual signed up to Anthem's healthcare plans.

31.     Due to company pressure to produce and because it was not possible to meet required quotas working only during their regular scheduled hours, Plaintiff HARRIS and Class Members had no choice but to engage in work activities after their scheduled hours.  Plaintiff HARRIS and her coworkers took calls after hours, including on weekends.  Plaintiff HARRIS and

Class Members would also submit completed forms and applications necessary to enrollment after hours. Although Plaintiff and Class Members were working overtime, Defendant never paid them overtime.

32.     Plaintiff was scheduled for a forty (40) hour work-week, Monday through Friday for eight (8) hours per day.  In reality Plaintiff, FLSA Collective Plaintiffs, and Class Members worked well in excess of scheduled hours for which they were never compensated.

33.     For Plaintiff HARRIS to meet her production quota, she needed to input a certain number of completed enrollment applications into Defendants' system. During the majority of the year, Plaintiff HARRIS had to input six to eight 6 (6-8) completed applications per hour.  During the open enrollment period – November 1 through January 15 – Plaintiff HARRIS's requirements more than doubled. The progress of meeting these quotas was reviewed every three months. In order to meet these quotas throughout the year, Plaintiff HARRIS typically had to work 68 hours per week, with approximately 28 hours overtime per week. Class Members also worked similar unpaid overtime hours.  Plaintiff HARRIS and Nationwide FLSA Collective Plaintiffs and Class Members would spend at least half their regularly scheduled hours working from home, and would work from home to complete their additional work.

34.     Plaintiff HARRIS, Nationwide FLSA Collective Plaintiffs and Class Members were not compensated for all hours worked outside their scheduled hours.

35.     Defendant induced off-the-clock overtime hours by creating extreme quotas for their sales and enrollment teams, which they are required to work overtime to meet. Defendant threatened adverse employment action against employees requesting to be compensated for their overtime hours, which forced Plaintiff HARRIS, Nationwide FLSA Collective Plaintiffs and Class Members to work off-the-clock or risk termination for failure to meet quotas.

36.     Defendants knowingly failed to pay Plaintiff HARRIS, Nationwide FLSA Collective Plaintiffs and Class Members for their overtime hours, as Defendants could oversee much of the clock work performed by Plaintiff HARRIS, Nationwide FLSA Collective Plaintiffs and Class Members.   Plaintiff HARRIS, Nationwide FLSA Collective Plaintiffs and Class Members, working from home and off the clock, would still input sales and enrollment packages into Defendants' system.  The timing of such entered sales and enrollment would be marked by Defendants' system. As such, Defendants could monitor when this work was occurring, and they knowingly failed to compensate these off-the-clock hours.

*Plaintiff LITA FILLIPO Claims*

37.     On August 9, 2021, Defendant hired Plaintiff LITA FILLIPO to work as a sales employee for Anthem's Indianapolis region. While employed by Defendants, Plaintiff predominantly worked from her home in Porter, Indiana.  Plaintiff LITA FILLIPO's employment with Defendant ended on or around November 16, 2021.

38.     In her position, Plaintiff LITA FILLIPO sold Defendant's private insurance plans and Defendant's private Medicare/Medicaid plans.  Defendant's private Medicare/Medicaid plans provide all the same benefits covered by Medicare/Medicaid, like doctor and hospital services, but these plans will also typically offer extra benefits not covered by Medicare/Medicaid, like eyeglasses, hearing aids or health club memberships.  In addition, to the monthly premium Defendant would earn from each new member enrolled by Plaintiff LITA FILLIPO and her co-workers, Defendant would also receive a subsidy from the United States Government for each enrolled member.  In 2009, the subsidy for private Medicare plans averaged $9,900 per person per year.

39.     Due to the incredible monetary benefits received through the enrollment of new members, Defendant has at all times instituted quotas for the number of customers each sales representative must enroll.  Due to company pressure to produce and because it was not possible to meet required quotas during their regular scheduled hours, Plaintiff LITA FILLIPO and similarly situated employees had no choice but to engage in work activities after their scheduled hours.  Plaintiff LITA FILLIPO engaged with clients on the phone after hours, including on weekends. Although Plaintiff LITA FILLIPO was working overtime, Defendant never paid Plaintiff LITA FILLIPO overtime.

40.     Plaintiff LITA FILLIPO was scheduled for a forty (40) hour workweek, Monday through Friday for eight (8) hours per day.  In reality Plaintiff LITA FILLIPO, FLSA Collective Plaintiffs, and Class Members worked well in excess of scheduled hours for which they were never compensated.

41.     For Plaintiff LITA FILLIPO to meet her production quotas, she needed to sign up at least (12) additional members per month, and during 'open enrollment,' the period between October and December of each year, Plaintiff was required to enroll forty-five (45) members a month.  The progress of meeting these quotas was reviewed every three months. To meet these quotas, Plaintiff LITA FILLIPO typically worked 70 hours per week, with approximately 30 hours overtime per week.  Class Members would also work similar unpaid overtime hours.  Plaintiff LITA FILLIPO and other employees would spend at least half their regularly scheduled hours working from home, and would work from home to complete their additional work.

*Collective and Class Wage Allegations*

42.     Nationwide FLSA Collective Plaintiffs and Class Members were all required to fill similar quotas and regularly worked over forty (40) hours per week to meet the demands of

Defendant or risk termination.  Despite working significant overtime, Defendant failed to pay Nationwide FLSA Collective Plaintiffs and Class Members their earned overtime premium compensation.

43.     Defendant induced off-the-clock overtime hours by creating extreme quotas for their sales and enrollment teams, which required overtime to meet, but Defendant threatened adverse employment action against employees requesting to be compensated for their overtime hours, which forced Plaintiffs, Nationwide FLSA Collective Plaintiffs and Class Members to work off-the-clock or risk termination for failure to meet quotas.

44.     Defendant knowingly and willfully operated its business with a policy of not providing wage statements to Plaintiffs and Class Members that list the accurate rates of pay and regular and overtime hours worked per week, as required by applicable state wage laws.

45.     Defendant knowingly and willfully operated its business with a policy of not providing wage and hour notices that list the accurate rates of pay and regular and overtime hours worked per week to Plaintiffs and Class Members, in violation of applicable state wage laws.

46.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiff, Nationwide FLSA Collective Plaintiffs and Class Members in this litigation and has agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

### ON BEHALF OF PLAINTIFF AND NATIONWIDE FLSA COLLECTIVE PLAINTIFFS

47.     Plaintiffs reallege and reaver by reference all allegations in the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

48.    At all relevant times, Defendant was and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and Nationwide FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

49.    At all relevant times, Defendant employed Plaintiffs and Nationwide FLSA Collective Plaintiffs within the meaning of the FLSA.

50.    At all relevant times, Defendant had gross annual revenues in excess of $500,000.

51.    At all relevant times, Defendant had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiffs and Nationwide FLSA Collective Plaintiffs for their hours worked in excess of forty (40) hours per workweek.

52.    Defendant knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by its failure to compensate Plaintiffs and Nationwide FLSA Collective Plaintiffs at the statutory overtime premium of time and one-half for their hours worked in excess of forty (40) hours per week when Defendant knew or should have known such was due.

53.    Defendant failed to properly disclose or apprise Plaintiffs and Nationwide FLSA Collective Plaintiffs of their rights under the FLSA.

54.    As a direct and proximate result of Defendant's willful disregard of the FLSA, Plaintiff and Nationwide FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

55.    Due to the intentional, willful and unlawful acts of Defendant, Plaintiffs and Nationwide FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid overtime compensation, plus an equal amount as liquidated damages.

56.    Records, if any, concerning the number of hours worked by Plaintiffs and Nationwide FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and Nationwide FLSA Collective Plaintiffs are in the possession and custody of Defendant. Plaintiffs intends to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

57.    Plaintiffs and Nationwide FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

## COUNT II

## VIOLATIONS OF THE VIRGINIA STATE WAGE AND HOUR LAWS

## ON BEHALF OF PLAINTIFF HARRIS AND VIRGINIA SUBCLASS MEMBERS

58.    Plaintiff ASHLEY HARRIS realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

59.    Virginia Code § 40.1-29 provides that "[n]o employer shall withhold any part of the wages or salaries of any employee except for payroll, wage or withholding taxes or in accordance with law, without the written and signed authorization of the employee."

60.    Virginia Code § 40.1-29 also provides that an employee shall be timely "paid all wages or salaries due him for work performed . . . ."

61.    Virginia Code § 40.1-29 also requires that an "employer . . . shall provide to each employee a written statement, by a paystub or online accounting, that shows . . . the number of hours worked during the pay period if the employee is paid on the basis of . . . the number of hours worked [and] the rate of pay . . . . The paystub or online accounting shall include sufficient information to enable the employee to determine how the gross and net pay were calculated."

62.    Virginia Code § 40.1-29 also provides that "if an employer fails to pay wages to an employee in accordance with this section, the employee may bring an action, individually, jointly, with other aggrieved employees, or on behalf of similarly situated employees as a collective action consistent with the collective action procedures of the Fair Labor Standards Act, 29 U.S.C. § 216(b), against the employer in a court of competent jurisdiction to recover payment of the wages, and the court shall award the wages owed, an additional equal amount as liquidated damages, plus prejudgment interest . . . and reasonable attorney fees and costs."

63.    Virginia Code § 40.1-29 also provides that "[i]f the court finds that the employer knowingly failed to pay wages to an employee in accordance with this section, the court shall award the employee an amount equal to triple the amount of wages due and reasonable attorney fees and costs."

64.    Defendants violated Virginia law by knowingly failing to pay Plaintiffs and other similarly situated individuals their wages due for hours worked over forty in a week and knowingly failing to provide Plaintiffs and other similarly situated individuals' paystubs showing hours worked and rate of pay.

65.    Plaintiff HARRIS and Virginia Subclass Members are "employees" and Defendant was their "employer[]."

66.    At all relevant times, Plaintiff HARRIS and Virginia Subclass Members were employed by Defendant within the meaning of the applicable state wage and hour laws.

67.    Defendant knowingly and willfully violated Plaintiff HARRIS and Virginia Subclass Members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

68.     Defendant knowingly and willfully failed to provide proper wage statements and notices to Plaintiff HARRIS and Virginia Subclass Members, as required.

69.     Due to Defendant's state law violations, Plaintiff HARRIS and Virginia Subclass Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

70.     Additionally, Va. Code § 40.1-28.7:7 provides that "[a]n individual who has not been properly classified as an employee may bring a civil action for damages against his employer for failing to properly classify the employee if the employer had knowledge of the individual's misclassification."

71.     Va. Code § 40.1-28.7:7 further provides that "[i]f the court finds that the employer has not properly classified the individual as an employee, the court may award the individual damages in the amount of any wages, salary, employment benefits, including expenses incurred by the employee that would otherwise have been covered by insurance, or other compensation lost to the individual, a reasonable attorney fee, and the costs incurred by the individual in bringing the action."

72.     Defendants knowingly improperly classified Plaintiff HARRIS and Virginia Subclass Members independent contractors rather than employees, resulting in a denial to Plaintiff HARRIS and Virginia Subclass Members and similarly situated individuals of overtime premiums and other employment benefits guaranteed to employees.

**COUNT III**

**VIOLATION OF INDIANA STATE WAGE AND HOUR LAWS**

**ON BEHALF OF PLAINTIFF FILLIPO AND INDIANA SUBCLASS MEMBERS**

73.     Plaintiff LITA FILLIPO realleges and reavers by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

74.     At all relevant times, Plaintiff LITA FILLIPO and Indiana Subclass Members were employed by Defendant within the meaning of ISWL and pursuant to Ind. Code § 22-2-2-3.

75.     At all relevant times, ISWL, pursuant to Ind. Code § 22-2-2-4-(f) and (g) require employers to pay employees overtime at a rate of 1½ time their regular rate when they work more than 40 hours in a workweek, and when they work more than eight (8) hours in a day, unless otherwise exempt.

76.     At all relevant times, Defendant had a policy and practice of failing to pay overtime compensation at the statutory rate of time and one-half to Plaintiff LITA FILLIPO and Indiana Subclass Members for their hours worked in excess of forty (40) hours per workweek.

77.     Defendant knew of and/or showed a willful disregard for the provisions of the ISWL as evidenced by its failure to compensate Plaintiff LITA FILLIPO and Indiana Subclass Members at the statutory overtime premium of time and one-half for their hours worked in excess of forty (40) during a week and in excess of eight (8) each day.

78.     Defendant knowingly and willfully failed to provide proper wage statements and notices to Plaintiff LITA FILLIPO and Indiana Subclass Members, as required under ISWL.

79.     Due to Defendant's state law violations, Plaintiff LITA FILLIPO and Indiana Subclass Members are entitled to recover from Defendant their unpaid overtime compensation,

damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## COUNT IV

## VIOLATION OF APPLICABLE STATE WAGE AND HOUR LAWS

80.     Plaintiffs reallege and reaver by reference all allegations in all the preceding paragraphs of this class and collective action Complaint as if fully set forth herein.

81.     At all relevant times, Plaintiffs and Class Members were employed by Defendant within the meaning of the applicable state wage and hour laws.

82.     Defendant knowingly and willfully violated Plaintiffs and Class Members' rights by failing to pay them the proper overtime compensation at rates of not less than one and one-half times the regular rate of pay for each hour worked in excess of forty (40) hours in a workweek.

83.     Defendant knowingly and willfully failed to provide proper wage statements and notices to Plaintiff and Class Members, as required under the applicable state wage and hour laws.

84.     Due to Defendant's state law violations, Plaintiffs and Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payments, statutory penalties, liquidated damages, reasonable attorneys' fees and costs and disbursements of the action.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs on behalf of themselves, Nationwide FLSA Collective Plaintiffs and Class Members, respectfully requests that this Court grant the following relief:

a.     A declaratory judgment that the practices complained of herein are unlawful under the FLSA and the applicable state laws;

b.    An injunction against Defendant and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

c.    An award of unpaid overtime compensation due under the FLSA and the applicable state laws;

d.    An award of statutory penalties as a result of Defendant's failure to comply with the wage notice and wage statement requirements under the applicable state laws;

e.    An award of liquidated and/or punitive damages as a result of Defendant's willful failure to pay overtime compensation, pursuant to the FLSA and/or and the applicable state laws;

f.    An order awarding relief for Defendant's discriminatory conduct, including but not limited to back pay, compensatory and punitive damages;

g.    An award of prejudgment and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h.    Designation of Plaintiffs as Representative of the Nationwide FLSA Collective Plaintiffs;

i.    Designation of this action as a class action pursuant to F.R.C.P. 23;

j.    Designation of Plaintiffs as Representative of the Class and any respective subclasses; and

k.    Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated:    January 3, 2022                    Respectfully submitted,

By:      ___*s/ C.K. Lee*___
C.K. Lee, Esq.

LEE LITIGATION GROUP, PLLC
C.K. Lee (CL 4086)
148 West 24th Street, Eighth Floor
New York, NY 10011
Tel.: 212-465-1188
Fax: 212-465-1181

*Attorneys for Plaintiff, Nationwide FLSA Collective Plaintiff and the Class*