UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ASHLEY HARRIS, *on behalf of herself, Nationwide FLSA Collective Plaintiffs, and the Class*, ) ) ) ) | |
| *Plaintiff*, ) ) | |
| *vs.* ) ) | No. 1:22-cv-00002-JMS-MJD |
| THE ANTHEM COMPANIES, INC., ) ) | |
| *Defendant*. ) | |

## <u>ORDER</u>

Plaintiff Ashley Harris, on behalf of herself and others similarly situated, initiated this lawsuit in January 2022 against her former employer, Defendant The Anthem Companies, Inc. ("<u>Anthem</u>").  [Filing No. 1.]  In the operative Third Amended Complaint, Ms. Harris alleges violations of the federal Fair Labor Standards Act ("<u>FLSA</u>") (Count I) and of multiple state wage and hour laws (Counts II and III).  [Filing No. 76.]  The state law claims include alleged violations of the Virginia Minimum Wage Act, the state law applicable to Ms. Harris's employment at Anthem (Count II), and the laws of twenty-three other states where Anthem operates (Count III).  [Filling No. 76 at 17-19.]  Anthem has filed a Partial Motion to Dismiss, seeking dismissal of the twenty-three other state law violations (Count III) pursuant to Federal Rule of Civil Procedure 12(b)(6).  [Filing No. 35.][1]

---

[1] Although Anthem's Motion to Dismiss was filed before the Third Amended Complaint, the Court deemed the motion to apply to the Third Amended Complaint unless Anthem filed a new motion to dismiss.  [Filing No. 75 at 7.]  Because no new motion to dismiss was filed, the Court considers the Motion to Dismiss and all related briefing to apply to the Third Amended Complaint.

In addition, it was recently discovered that Ms. Harris filed a Chapter 13 bankruptcy petition in July 2019, but she never disclosed this lawsuit or the existence of the claims at issue in this lawsuit to the Bankruptcy Court.  As a result, Anthem has filed a Motion for Judgment on the Pleadings Based on Failure to Disclose Lawsuit in Bankruptcy ("Motion for Judgment on the Pleadings"), arguing that judicial estoppel prevents Ms. Harris from pursuing claims that she failed to disclose to the Bankruptcy Court and that Ms. Harris lacks standing to bring claims that belong to the bankruptcy estate.  [Filing No. 83.]  In response to Anthem's Motion for Judgment on the Pleadings, Ms. Harris filed a Motion to Stay this Case Pending the Amendment of Her Bankruptcy Filings ("Motion to Stay"), asking the Court to stay this case for 90 days to allow her to amend the filings in her bankruptcy case.  [Filing No. 94.]

This Order addresses the Motion to Dismiss, Motion to Stay, and Motion for Judgment on the Pleadings, which are all ripe for the Court's decision.

# I.
## MOTION TO DISMISS

### A.  Standard of Review

Under Rule 12(b)(6), a party may move to dismiss a claim that does not state a right to relief.  The Federal Rules of Civil Procedure require that a complaint provide the defendant with "fair notice of what the ... claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007)).  In reviewing the sufficiency of a complaint, the Court must accept all well-pled facts as true and draw all permissible inferences in favor of the plaintiff.  *See Active Disposal Inc. v. City of Darien*, 635 F.3d 883, 886 (7th Cir. 2011).  A Rule 12(b)(6) motion to dismiss asks whether the complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  The

Court may not accept legal conclusions or conclusory allegations as sufficient to state a claim for relief.  *See McCauley v. City of Chicago*, 671 F.3d 611, 617 (7th Cir. 2011).  Factual allegations must plausibly state an entitlement to relief "to a degree that rises above the speculative level." *Munson v. Gaetz*, 673 F.3d 630, 633 (7th Cir. 2012).  This plausibility determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

### B.  Statement of Facts

Consistent with the standard of review outlined above, the following allegations from Ms. Harris's Third Amended Complaint, [Filing No. 76], are taken as true.

Anthem is a healthcare enterprise that provides programs and services to uninsured and underinsured individuals.  [Filing No. 76 at 4.]  Anthem is organized under the laws of Indiana but provides its services nationwide in at least the following states: Arkansas, California, Colorado, Connecticut, Florida, Georgia, Indiana, Iowa, Kentucky, Louisiana, Maine, Maryland, Minnesota, Missouri, Nebraska, Nevada, New Hampshire, New Jersey, New York, North Carolina, Puerto Rico, South Carolina, Tennessee, Texas, Virginia, Washington, West Virginia, and Wisconsin. [Filing No. 76 at 4.]

Ms. Harris worked as a non-exempt Enrollment Specialist at Anthem in Virginia, where she resides.  [Filing No. 76 at 2.]  Ms. Harris asserts that Anthem forced enrollment specialists and salespersons to work overtime hours by implementing minimum productivity quotas that required overtime hours to meet.  [Filing No. 76 at 1.]  But if employees reported those overtime hours, Anthem would subject those employees to productivity reviews, reprimand, and even termination. [Filing No. 76 at 1.]  Ms. Harris contends that this policy and practice compelled employees to

underreport their working hours and work off the clock to maintain job security and avoid productivity reviews, reprimand, and termination.  [Filing No. 76 at 2.]

Ms. Harris's Third Amended Complaint alleges three counts.  [Filing No. 76.]  Count I alleges a violation of the FLSA and seeks the certification of a nationwide opt-in collective action, seeking relief on behalf of Ms. Harris and other Anthem employees throughout the United States. [Filing No. 76 at 6; Filing No. 76 at 15-17.]  Count II alleges violations of Virginia wage and hours laws and seeks relief pursuant to Federal Rule of Civil Procedure 23 on behalf of Ms. Harris and a subclass of Anthem employees in Virginia.  [Filing No. 76 at 7-10; Filing No. 76 at 17-19.] Count III alleges violations of twenty-three other state wage and hours laws, also in the form of a Rule 23 class action, on behalf of Anthem employees in those states and any  other state not yet specifically identified (except New York) but in which Anthem may have employees.  [Filing No. 76 at 2-3; Filing No. 76 at 7-10; Filling No. 76 at 19.]

> Ms. Harris defines the Rule 23 class for Count III as:
>
> [A]ll non-managerial employees classified by [Anthem] as non-exempt who engaged or facilitated in the enrollment and/or recertification of [Anthem's] clients (including but not limited to all non-managerial, Customer Service Representatives, Membership Enrollers, and Sales Representatives, throughout the United States with the exception of New York State) employed by [Anthem] in the three (3) years, or the relevant statutory period of each state's applicable labor law if longer, prior to the filing of the Complaint in this case.

[Filing No. 76 at 7.]  Ms. Harris proposes to designate subclasses as to each proposed state where Anthem operates.  [Filing No. 76 at 7.]  Anthem filed a Partial Motion to Dismiss pursuant to Rule 12(b)(6) seeking to dismiss only Count III.  [Filing No. 35.]

**C.  Discussion**

It its Motion to Dismiss, Anthem argues that Count III must be dismissed because it cannot proceed on a "class basis" under Rule 23 for two reasons: (1) a class action is not superior to other

methods of adjudication for this dispute; and (2) Ms. Harris lacks standing to pursue relief on behalf of Anthem employees outside of Virginia and cannot serve as class representative for the proposed subclasses of employees in states other than Virginia. [Filing No. 35 at 8.] First, Anthem claims that Rule 23 requires that a class action be superior to other available methods of litigating a dispute, but a case involving twenty-four state subclasses and a federal collective is "not a superior way to litigate this dispute" but is rather "quintessentially unmanageable." [Filing No. 35 at 8.] Specifically, Anthem highlights that the state laws applicable to each of the subclasses are "not anywhere close to the same" because some carry different statutes of limitations, some follow the FLSA, some impose a pre-suit notice requirement, some allow for liquidated damages, and some states have no overtime laws at all. [Filing No. 35 at 9-10.] Second, Anthem argues that Ms. Harris lacks standing to sue on behalf of Anthem employees not residing in Virginia because she did not work in any state other than Virginia, did not suffer an injury in any of those other states, and is not a member of the proposed subclasses for any of those other states. [Filing No. 35 at 11-12.] For the same reasons, Anthem contends that Ms. Harris does not meet the Rule 23 requirement of being a class representative who can "fairly and adequately protect the interests of the class." [Filing No. 35 at 12.]

In response, Ms. Harris argues that Anthem is impermissibly attempting to argue a Rule 23 motion for class certification before the exchange of any discovery. [Filing No. 40 at 4.] Stated differently, Ms. Harris asserts that Anthem's motion is procedurally premature because Anthem is really arguing that the concerns of unmanageability show that a Rule 23 class should not be certified. [Filing No. 40 at 4-5.] And this determination, Ms. Harris contends, is one that is best left for the class certification stage. [Filing No. 40 at 4-5.] Further, Ms. Harris argues that she has standing to allege violations of out-of-state laws on behalf of class members because the conduct

alleged to have caused the injury in other states is the same conduct alleged to have caused her injury in Virginia. [Filing No. 40 at 8.]

In reply, Anthem argues that its Motion to Dismiss is timely because dismissal may sometimes be proper at the pleading stage when "it is clear from the complaint that certification is improper." [Filing No. 43 at 2.] Further, Anthem reiterates its argument that because Ms. Harris resides only in Virginia, she lacks standing to bring Count III on behalf of the proposed class. [Filing No. 43 at 4.]

### 1. Rule 23 Arguments

As outlined above, under Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. 678 (quoting. *Twombly*, 550 U.S. at 570). The purpose of a motion to dismiss under Rule 12(b)(6) "is to test the legal sufficiency of a complaint, not to resolve the case on its merits." *Collins v. Feiwell & Hannoy, P.C.*, 2008 WL 4810550, at *2 (S.D. Ind. Oct. 30, 2008). This pleading-focused standard is distinct from a Rule 23 motion to certify a class, which focuses instead on the satisfaction of all four elements of Rule 23(a) plus one of the three permissible types of class actions set forth in Rule 23(b). *See Simpson v. Dart*, 23 F.4th 706, 711 (7th Cir. 2022). Under Rule 23(a), certifying a class first requires demonstrating that: (1) the class is too numerous to join all members; (2) there are questions of law or fact common to the class; (3) the claims or defenses of representative parties are typical of those class members; and (4) the representative parties will fairly and adequately represent the class. A motion to certify, therefore, asks whether a claim can proceed as a class action, but a motion to dismiss asks whether the pleadings state a legally sufficient claim. *Compare* Fed. R. Civ. P. 23(a) and (b) *with* Fed. R. Civ. P. 12(b)(6). Because of the different focus in each analysis, courts in the Seventh Circuit follow the "general rule [that] whether a suit can be maintained as a class or collective action is

determined not on a Rule 12(b)(6) motion, but on a motion to certify a class action under Rule 23 or a motion to certify a collective action under 29 U.S.C. § 216(b)." *Dominguez v. Micro Ctr. Sales Corp.,* 2012 WL 1719793, at *2 (N.D. Ill. May 15, 2012); *see also Howard v. Renal Life Link, Inc.*, 2010 WL 4483323, at *2 (N.D. Ill. Nov. 1, 2010).

Anthem first focuses its dismissal argument on the perceived unmanageability and inefficiency of allowing the state law claims to proceed on a class basis. [Filing No. 35 at 8.] Indeed, Anthem alleges that Harris cannot satisfy Rule 23's various requirements. [Filing No. 35 at 8.] But by this framing, Anthem is arguing that Harris failed to state a claim because the claim is unmanageable as a class action—not that Harris failed to state a claim because of legal insufficiency. This argument blurs the standards and procedural devices of a Rule 12(b)(6) motion to dismiss and a Rule 23 motion to certify. The presence of a potentially complex class action does not affect the plausibility or legal sufficiency of a claim.

Further, while Anthem correctly asserts that several courts have refused to certify a class because multiple state laws render it unmanageable, [Filing No. 35 at 9], Ms. Harris also correctly points out that those courts have made that determination on a Rule 23 motion for class certification, not a Rule 12(b)(6) motion to dismiss. [Filing No. 40 at 5.] Anthem contends that the multiple state law claims here are potentially unmanageable by highlighting the discrepancies among the laws (*i.e.*, some allow for liquidated damages and there are different statutes of limitation), but this argument gets at the heart of the "rigorous analysis" the Court must undertake at the class certification stage. *Simpson,* 23 F.4th at 711 (recognizing that the Supreme Court in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351 (2011), has characterized a district court's determination of class certification as a "rigorous analysis").

Lastly, Anthem cites to *Kasalo v. Harris & Harris, Ltd.* for the proposition that "a court may deny class certification even before the plaintiff files a motion requesting certification." 656 F.3d 557, 563 (7th Cir. 2011). But the court in *Kasalo* did not do what Anthem is asking this Court to do. Rather, the *Kasalo* Court remanded for "sufficient discovery into the propriety" of the class count so that the district court would "be in the position to make an appropriate ruling." *Id.* *Kasalo* also goes on to say that a court *may* deny class certification before a motion has been made "if it thinks that additional discovery would not be useful in resolving the class determination." *Id.* To be sure, Anthem has produced some discovery in this case. But even so, the Court declines to go against the general rule that a Rule 12(b)(6) motion is not the correct device to determine whether the case can proceed on a class basis. To make an appropriate class certification ruling with the multiple requirements of Rule 23 in mind, the Court requires a record and briefing adequate to address all Rule 23 requirements.

### 2.   Standing

Anthem also argues that this case should be dismissed because Ms. Harris lacks standing to pursue claims on behalf of class members in states other than Virginia. When it comes to standing in class actions, "[t]he Seventh Circuit has followed the Supreme Court's direction in *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 119 S. Ct. 2295, 144 L.Ed.2d 715 (1999)[,] and held that class certification should normally precede Article III standing challenges." *Saltzman v. Pella Corp.*, 257 F.R.D. 471, 480 (N.D. Ill. 2009), *aff'd,* 606 F.3d 391 (7th Cir. 2010) (citing *Payton v. Cnty. of Kane*, 308 F.3d 673, 680 (7th Cir. 2002)). In *Ortiz,* the Supreme Court addressed an argument that certain class members in asbestos litigation were without injury in fact and thus lacked standing to sue. *Ortiz,* 527 U.S. at 831. The part of the class at issue included "'future spouses, parents, children, and other relatives' of class members exposed to Fibreboard asbestos."

*Id.* at 825-26.  The class was certified and affirmed by the Fifth Circuit.  *Id.* at 827-29.  But Judge Smith of the Fifth Circuit dissented from affirming the class, *id.* at 829-30, arguing in part that standing was defeated because some of the class "had not been conceived at the time the complaint was filed" and therefore could not prove injury in fact, *In re Asbestos Litig.*, 90 F.3d 963, 1018–19 (5th Cir. 1996) (Smith, J., dissenting).  In addressing this threshold standing issue, the Supreme Court held that "class certification issues are . . . 'logically antecedent' to Article III concerns . . . and themselves pertain to statutory standing, which may properly be treated before Article III standing." *Ortiz,* 527 U.S. at 831.

The Seventh Circuit applied the "logically antecedent" rule in *Payton* to allow an analysis of class certification before analyzing Article III standing concerns. *Payton*, 308 F.3d at 680.  The plaintiffs in *Payton* filed a putative class action against several Illinois counties challenging the practice of imposing a bail fee above the set bail amount as a condition for release on bail. *Id.* at 675.  The named plaintiffs had direct claims only against two of the nineteen defendant counties. *Id.* at 678.  The Court addressed the standing argument of "whether these named plaintiffs may represent a class that includes people from the other 17 named counties," and, pointing to *Ortiz*, held that class certification should be addressed before any Article III concerns. *Id.* at 680.  This is because "[t]he certification of a class changes the standing aspects of a suit." *Id.*  "[A] properly certified class has a legal status separate from and independent of the interest asserted by the named plaintiff." *Id.*

This Court will follow the direction of both the Supreme Court and the Seventh Circuit in deferring the determination on Anthem's Article III standing challenges to the class certification stage.  The same is true for a determination regarding the manageability of a potential Rule 23 class action.  The Court expresses no opinion as to the merits of either of these issues, but merely

finds that a motion to dismiss is not the proper vehicle to consider them.  Accordingly, Anthem's

Motion to Dismiss, [Filing No. 35], is **DENIED**.

## II.
### MOTION FOR JUDGMENT ON THE PLEADINGS AND MOTION TO STAY

In support of its Motion for Judgment on the Pleadings, Anthem points out that, to date,

Ms. Harris has not disclosed this lawsuit or the existence of the claims at issue in this lawsuit to

the Bankruptcy Court, despite her duty to truthfully disclose all assets.  [Filing No. 84 at 1-3.]

Accordingly, Anthem asserts, "Ms. Harris pursued a position before the bankruptcy court that is

inconsistent with the claim[s] she is currently pursuing against Anthem," and "[b]ecause that

inconsistency rests on a bed of deception that judicial estoppel exists to expunge, her claims should

be dismissed." [Filing No. 84.]  Anthem contends that Ms. Harris "has no possible excuse here

for failing to disclose this lawsuit to the bankruptcy court" and therefore her claims are barred by

judicial estoppel.  [Filing No. 84 at 5-8.]  In addition, Anthem argues that Chapter 13 debtors have

no standing to pursue lawsuits on their own behalf, and instead may pursue them only on behalf

of the bankruptcy estate as a debtor-in-possession.  [Filing No. 84 at 8.]  However, Anthem asserts,

because Ms. Harris did not disclose this lawsuit to the bankruptcy court, "she isn't and cannot claim

to be pursuing the claims on behalf of the bankruptcy estate," and therefore lacks standing to pursue

the claims on her own behalf.  [Filing No. 84 at 8.]

Instead of responding to Anthem's Motion for Judgment on the Pleadings, Ms. Harris filed

her Motion to Stay.[2]  [Filing No. 94.]  In support of her motion, Ms. Harris states that she "does

---

[2] Counsel for Ms. Harris emailed the Court to advise that Ms. Harris would not be filing a separate
response to the Motion for Judgment on the Pleadings other than the Motion to Stay, and asked
the Court to treat the Motion to Stay "as a cross-motion in response to" the Motion for Judgment
on the Pleadings.  Counsel for Anthem asserts in Anthem's filings that "this bizarre request was
not granted," [Filing No. 100 at 1 n.1], and that, as a result, the Court can summarily grant the
Motion for Judgment on the Pleadings based on Ms. Harris's failure to respond, pursuant to Local

not deny the existence of the problems highlighted by [Anthem]," but she asserts that the Bankruptcy Code contemplates that a debtor may amend her filings and she therefore asks the Court to exercise its inherent authority to stay this case for 90 days to permit her to: (1) amend her bankruptcy filings to reflect the claims asserted in this lawsuit; and (2) supply the Court with proof that she is pursuing those claims as a debtor-in-possession on behalf of the bankruptcy estate. [Filing No. 94 at 2; Filing No. 94 at 8.] Ms. Harris cites several cases in which district courts have permitted plaintiffs to amend their bankruptcy filings during the pendency of a lawsuit in response to defendants' judicial estoppel and standing arguments.  [Filing No. 94 at 3-5.]  She asserts that Anthem has an affirmative obligation to supply evidence that her omission was deliberate or done with a dishonest purpose, but Anthem has not provided any such evidence in this case.  [Filing No. 94 at 5-6.]  In fact, she contends, her failure to list her wage claims as an asset belonging to the bankruptcy estate "is completely understandable" because "[p]rior to obtaining counsel, she was not even aware of her rights." [Filing No. 94 at 6.]  She further argues that initiating this lawsuit in 2019—which was two and a half years after filing her bankruptcy petition and results in her being unable to recover two and a half years' worth of underpayments due to the statute of

---

Rule 7-1(c)(5), [Filing No. 103 at 3].  Both parties miss the mark on this issue.  As to Ms. Harris, the Court agrees that filing a Motion to Stay instead of responding to the Motion for Judgment on the Pleadings is neither logical nor procedurally proper.  More importantly, counsel for Ms. Harris is cautioned that, to the extent a party asks the Court to deviate from ordinary procedures, any such request should be made in a properly filed motion on the record, not informally in an email to the Court.  As to Anthem, the Court first notes that it did not grant or deny Ms. Harris's "bizarre request," because such request was never properly presented to the Court.  Regardless, while it is true that Local Rule 7-1(c)(5) empowers the Court to summarily grant a motion to which a party does not respond, this is not the typical case of a party failing to respond to a motion.  It is clear that Ms. Harris made arguments in her Motion to Stay that address and oppose the arguments made in Anthem's Motion for Judgment on the Pleadings, and although she presented these arguments in an arguably confusing and procedurally inappropriate way, the Court prefers to decide the Motion for Judgment on the Pleadings on its merits.  Accordingly, the Court declines to summarily rule on the Motion for Judgment on the Pleadings under Local Rule 7-1(c)(5).

limitations on her wage claims—is "not the behavior of someone who engaged in a calculated deception intended to preserve a cause of action for her own benefit" and instead shows that she was unaware of her wage claims. [Filing No. 94 at 6.] Finally, Ms. Harris argues that even if there was evidence showing an intent to deceive, the purpose of judicial estoppel is to prevent a plaintiff from obtaining a benefit in one case and then taking a contrary position to obtain a second benefit in another case, but because she proposes to pursue the claims in this action on behalf of the bankruptcy estate, she is not pursing a second benefit but instead would be seeking a benefit for her creditors. [Filing No. 94 at 7.]

In response, Anthem "agrees that this Court should stay proceedings in this matter, but only for the purpose of ruling on [Anthem's] pending, unopposed motion for judgment on the pleadings," because "[t]he Court's determination of that motion will end this case." [Filing No. 103 at 1.] However, Anthem opposes granting a stay "to the extent that [Ms. Harris's] motion seeks time to accomplish what she cannot, which is to save the claims that her bankruptcy trustee owns." [Filing No. 103 at 2.] Specifically, Anthem argues that Ms. Harris has not demonstrated good cause to stay this case, highlighting that she has yet to disclose this case to the Bankruptcy Court despite that: (1) more than three and a half years have elapsed since Ms. Harris left her employment at Anthem and her FLSA claim accrued; (2) it has been over ten months since she filed this lawsuit; (3) it has been more than six months since Anthem filed its Answer asserting its estoppel defense; (4) it has been more than four months since she disclosed her bankruptcy proceeding to Anthem during discovery; and (5) Anthem raised the bankruptcy issues in its Motion for Judgment on the Pleadings, to which Ms. Harris did not respond. [Filing No. 103 at 2-3.] Anthem further argues that Ms. Harris acted inconsistently with the stay she is now seeking because, instead of seeking a stay or attempting to take steps to cure the problems immediately

upon Anthem's filing of the Motion for Judgment on the Pleadings, she filed a Motion for Conditional Collective Certification, [Filing No. 85], and a Motion to Compel Discovery, [Filing No. 93]—both of which forced Anthem to immediately expend time and resources in response— and then failed to confer with Anthem before seeking a stay.  [Filing No. 103 at 3-4.]  Anthem argues that all of the cases cited by Ms. Harris are distinguishable and do not support her position. [Filing No. 103 at 4-6.]  Anthem further argues that, if the Court is inclined to stay the case as Ms. Harris requests, the Court should affirmatively rule that: (1) Ms. Harris is barred from pursuing her claim on her own behalf or on behalf of any putative class or collective; and (2) that her counsel, who is "equally culpable" for failing to disclose this case to the bankruptcy court after signing discovery responses regarding the existence of the bankruptcy case and knew that Ms. Harris was "perpetuating a fraud," may not represent the bankruptcy Trustee in any continued action or benefit personally from this case in any way, such as through a fee recovery.  [Filing No. 103 at 7.]  Finally, Anthem suggests that the Court stay this case "until [it] rules on Anthem's ripe, dispositive motion for judgment on the pleadings so that the parties need not incur further burdens of litigation."  [Filing No. 103 at 8.]

In reply, Ms. Harris argues that Anthem "makes outlandish, exaggerated claims of fraud and concealment" concerning both Ms. Harris and her counsel.  [Filing No. 108 at 1.]  She points out that Anthem and its counsel have been aware of the bankruptcy pleading since July of this year, when it was disclosed during discovery, and all parties—not just Ms. Harris and her counsel—"failed to realize the implication of the bankruptcy on the current case" and Anthem and its counsel failed to notify the Court of the potential consequences until October 2022.  [Filing No. 108 at 1.]

Ms. Harris does not dispute that the claims at issue in this litigation are property of the bankruptcy estate or that, as a Chapter 13 debtor-in-possession, she may prosecute these claims for the benefit of the estate and its creditors, but not for her own benefit. *See Cable v. Ivy Tech State Coll.*, 200 F.3d 467, 472-74 (7th Cir. 1999), *overruled on other grounds by Hill v. Tangherlini*, 724 F.3d 965, 967 n.1 (7th Cir. 2013); *see also Rainey v. United Parcel Serv., Inc.*, 466 F. App'x 542, 544 (7th Cir. 2012) ("The debtor . . . can pursue legal claims for the benefit of the estate and its creditors."); Fed. R. Bankr. P. 6009 ("[T]he trustee or debtor in possession may prosecute . . . any pending action or proceeding by . . . the debtor, or commence and prosecute any action or proceeding in behalf of the estate before any tribunal."). Accordingly, to the extent that Anthem seeks an affirmative ruling that Ms. Harris may not pursue her claims on her own behalf, that request is granted; Ms. Harris may pursue her claims on behalf of the bankruptcy estate only. The Court therefore must consider whether to allow Ms. Harris to amend her bankruptcy filings to permit her to proceed with this action on behalf of the bankruptcy estate, or whether principles of judicial estoppel prevent her from pursuing this action at all.

"The doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014). The purpose of the doctrine is "to protect the integrity of the judicial process[] by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotations and citations omitted). It is an equitable doctrine that may be invoked by a court, at its discretion, to "prevent improper use of judicial machinery." *Id.* at 750 (internal quotations and citations omitted).

14

Although the circumstances under which it may be appropriate to invoke the doctrine of judicial estoppel "are probably not reducible to any general formulation of principle," the Supreme Court has recognized three factors that "typically inform the decision whether to apply the doctrine in a particular case." *Id.* "Those factors are first, that 'a party's later position must be clearly inconsistent with its earlier position;' second, that 'the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or second court was misled;' and third, that 'the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped.'" *In re Knight-Celotex, LLC*, 695 F.3d 714, 721-22 (7th Cir. 2012) (quoting *New Hampshire v. Maine*, 532 U.S. at 750-51). "These factors are not a rigid test that must be applied every time the issue of judicial estoppel is raised, but rather are general guideposts that must be considered in the context of all the relevant equities in any given case." *In re Knight-Celotex*, 695 F.3d at 722.

In the context of bankruptcy disclosures specifically, the Seventh Circuit has recognized that "[p]lenty of authority supports the . . . conclusion that a debtor in bankruptcy who receives a discharge (and thus a personal financial benefit) by representing that [s]he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim." *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006). Nevertheless, the Seventh Circuit concluded that, in such circumstances, applying judicial estoppel would have an adverse effect on the creditors who were unknowing victims of the debtor's bankruptcy fraud, noting that "[j]udicial estoppel is an equitable doctrine, and using it to land another blow on the victims of bankruptcy fraud is not an equitable application." *Id.* at 413. Despite these pronouncements, however, the *Biesek* Court affirmed the district court's grant of summary judgment in favor of the

defendant because judicial estoppel prevented the plaintiff-debtor from prosecuting the action in his own name, but "[n]either [the plaintiff-debtor] nor the Trustee . . . asked for a remand so that the Trustee could intervene and take over the suit on behalf of the estate," and the Court declined to "decide whether that step would have been proper." *Id*. at 413-14.

Later, in *Spaine*, the Seventh Circuit indicated that "[i]f there were undisputed evidence that [the plaintiff-debtor] concealed her claim" from the bankruptcy court, then it "would not be appropriate to allow [the plaintiff-debtor] to go forward with th[e] case based on her reopened and amended bankruptcy" because "such a ruling would encourage debtors to conceal assets as long as possible and then, if the omission is caught, to retreat and make a quick correction." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 548 (7th Cir. 2014). However, the record before the *Spaine* Court revealed only that the plaintiff-debtor had failed to disclose her claim to the bankruptcy court but later corrected that omission by orally informing the trustee of the claim, at which point the trustee decided to abandon the claim. *Id.* On those facts, the Seventh Circuit concluded that the district court erred in applying judicial estoppel to grant judgment in favor of the defendant. *Id.* However, the Court noted that its decision was "not to say that [the plaintiff-debtor's] oral disclosure of the lawsuit would necessarily foreclose use of judicial estoppel if [the defendant] could prove that [the plaintiff-debtor's] omission, though later cured, was an intentional effort to conceal an asset from her creditors." *Id.* Instead, the Court clarified that the defendant "needed to show more than an initial nondisclosure on a bankruptcy schedule" and had made "no effort" to establish that the plaintiff-debtor "had filed incomplete schedules with the subjective intent to conceal her lawsuit." *Id.*

Here, there is insufficient evidence demonstrating that Ms. Harris intentionally failed to disclose her wage claims against Anthem to the Bankruptcy Court in an effort to hide her potential

recovery from creditors.  To be sure, as noted above, Ms. Harris is prohibited from pursuing this action on her own behalf regardless of her intent.  And the Court is concerned by Ms. Harris's counsel's failure to recognize, address, or disclose the consequences of Ms. Harris's bankruptcy proceeding until after Anthem filed its Motion for Judgment on the Pleadings.  Nevertheless, the Seventh Circuit has made clear that "[j]udicial estoppel is an equitable doctrine, and it is not equitable to employ it to injure creditors who are themselves victims of the debtor's deceit." *Cannon-Stokes v. Potter*, 453 F.3d 446, 448 (7th Cir. 2006).

For these reasons, the Court in its discretion finds that a stay of this litigation is appropriate to provide Ms. Harris an opportunity to amend her bankruptcy filings.  *See Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936) ("[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.").  However, the Court will reserve ruling on Anthem's Motion for Judgment on the Pleadings until after the stay is lifted, to ensure that all of the impacts of the bankruptcy proceeding on this lawsuit are properly accounted for.[3]  *See Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 796 (7th Cir. 2013) ("To protect the integrity of the judicial process, a court [applying the doctrine of judicial estoppel] needs freedom to consider the equities of an entire case.").

---

[3] If, for example, the Bankruptcy Court does not permit Ms. Harris to amend her filings or the Trustee elects to abandon the wage claims, that would affect the Court's analysis of the judicial estoppel issue.  *See Cannon-Stokes*, 453 F.3d at 448 (explaining that judicial estoppel should not be exercised to disadvantage creditors, but noting that "if the estate (through the trustee) abandons the claim, then the creditors no longer have an interest, and with the claim in the debtor's hands the possibility of judicial estoppel comes to the fore").

In sum, Ms. Harris's Motion to Stay, [Filing No. 94], is **GRANTED in part except as set forth below**, and this case is **STAYED** for **90 days** from the date of this Order.  Anthem's Motion for Judgment on the Pleadings, [Filing No. 83], remains **UNDER ADVISEMENT**.

### III.
### CONCLUSION

Based on the foregoing, Anthem's Motion to Dismiss, [35], is **DENIED**.  Anthem's Motion for Judgment on the Pleadings, [83], remains **UNDER ADVISEMENT**.  Ms. Harris's Motion to Stay, [94], is **GRANTED in part**, and this case is **STAYED** for **90 days** from the date of this Order with the exception of the briefing on motions set forth below.  Ms. Harris shall file a Motion to Lift the Stay at the close of those 90 days, or sooner if she amends her bankruptcy filings before then.  In her Motion to Lift the Stay, Ms. Harris shall describe the amendments made to her bankruptcy filings and outline what, if any, impact those amendments have on this litigation and on the disposition of Anthem's Motion for Judgment on the Pleadings.  Briefing on the Motion to Lift the Stay shall proceed in accordance with Local Rule 7-1.

Although the case will be stayed, the Court exempts from the stay Ms. Harris's pending Motion to Compel, [Filing No. 93].  The Magistrate Judge may issue any orders necessary to facilitate the briefing and resolution of that motion.  In addition, notwithstanding the stay, the parties shall complete briefing on Ms. Harris's pending Motion for Conditional Collective Certification, [Filing No. 85], pursuant to the briefing schedule currently in place, [*see* Filing No. 110].  Ruling on this motion, however, will be reserved until the stay is lifted.

Date: 12/7/2022

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**<u>Distribution via ECF only to all counsel of record</u>**