UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ASHLEY HARRIS, *on behalf of herself,* *Nationwide FLSA Collective Plaintiffs, and the Class*, <br><br> *Plaintiff,* <br><br> vs. <br><br> THE ANTHEM COMPANIES, INC., <br><br> *Defendant.* | ) ) ) ) ) ) ) ) ) ) ) ) ) ) No. 1:22-cv-00002-JMS-MJD |

**ORDER**

Plaintiff Ashley Harris, on behalf of herself and others similarly situated, initiated this lawsuit in January 2022 against her former employer, Defendant The Anthem Companies, Inc. ("Anthem"). [Filing No. 1.] In the operative Third Amended Complaint, Ms. Harris alleges violations of the federal Fair Labor Standards Act ("FLSA") and multiple state wage and hour laws. [Filing No. 76.] Anthem filed a Motion for Judgment on the Pleadings, arguing that Ms. Harris's claims are barred by judicial estoppel because she failed to disclose the existence of this lawsuit to the Bankruptcy Court in her Chapter 13 bankruptcy proceeding. [Filing No. 83.] In response to that motion, Ms. Harris filed a Motion to Stay, asking the Court to stay these proceedings to give her an opportunity to disclose this lawsuit to the Bankruptcy Court. [Filing No. 94.] In an Order dated December 7, 2022, the Court granted the Motion to Stay, took the Motion for Judgment on the Pleadings under advisement, and stayed this proceeding for 90 days. [Filing No. 112.] The 90-day period has expired, and the parties were permitted to brief the issue of whether Ms. Harris was able to properly amend her filings in the Bankruptcy Court so that this

1

litigation may proceed. [*See* Filing No. 125; Filing No. 127; Filing No. 131.] With the benefit of such briefing, this Order addresses Anthem's outstanding Motion for Judgment on the Pleadings.

# I.
### STANDARD OF REVIEW

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." Pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 312 (7th Cir. 2020) (quotation and citation omitted). "The district court may also take judicial notice of matters of public record." *United States v. Wood*, 925 F.2d 1580, 1582 (7th Cir. 1991).

"When a plaintiff moves for judgment on the pleadings, the motion should not be granted unless it appears beyond doubt that the nonmovant cannot prove facts sufficient to support its position, and that the plaintiff is entitled to relief." *Scottsdale Ins. Co. v. Columbia Ins. Grp., Inc.*, 972 F.3d 915, 919 (7th Cir. 2020). "Judgment on the pleadings is appropriate when there are no disputed issues of material fact and it is clear that the moving party . . . is entitled to judgment as a matter of law." *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). In considering a motion for judgment on the pleadings, the Court must view all facts and inferences in the light most favorable to the non-moving party. *Federated Mut. Ins. Co.*, 983 F.3d at 313.

# II.
### BACKGROUND

**A. The Nature of the Claims Asserted in this Lawsuit**

Ms. Harris, who lives in Virginia, worked at Anthem from 2007 to approximately April of 2019. [Filing No. 76 at 11.] She alleges that, during her employment, Anthem implemented productivity quotas that required her and other employees to work overtime hours to meet. [Filing

No. 76 at 1.] She alleges that these quotas compelled employees to underreport their working hours and work off the clock to maintain job security and avoid productivity reviews, reprimand, and termination. [Filing No. 76 at 2.] Ms. Harris, on behalf of herself and putative classes of similarly situated employees, seeks recovery under the FLSA and several state wage and hours laws of unpaid wages, including unpaid overtime compensation. [Filing No. 76 at 2.]

### B. Ms. Harris's Bankruptcy Proceeding

In July 2019, Ms. Harris filed a petition for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of Virginia. [Filing No. 84-1.] In that petition, she did not disclose the existence of the claims underlying this lawsuit as an asset. [*See* Filing No. 84-1 at 14 (indicating that Ms. Harris did not have any "[c]laims against third parties, whether or not [she had] filed a lawsuit or made a demand for payment").] In September 2019, the Bankruptcy Court confirmed the Chapter 13 Plan, under which Ms. Harris is required to pay the Bankruptcy Trustee $150 per month for 48 months. [Filing No. 84-3; Filing No. 84-4.]

### C. Relevant Filings in this Lawsuit

In October 2022, Anthem filed its Motion for Judgment on the Pleadings, arguing that Ms. Harris was barred from pursuing her claims in this case under the doctrine of judicial estoppel, given that she failed to disclose her claims to the Bankruptcy Court. [Filing No. 84 at 1-8.] Anthem further argued that Ms. Harris lacks standing to pursue this lawsuit on her own behalf as a result of her bankruptcy proceeding. [Filing No. 84 at 8.]

Instead of responding to the Motion for Judgment on the Pleadings, Ms. Harris filed her Motion to Stay. [Filing No. 94.] In support of that motion, she argued that she did not intentionally fail to disclose her wage claims to the Bankruptcy Court, and she asked this Court to stay this proceeding to allow her to return to the Bankruptcy Court and make the required disclosures.

[Filing No. 94 at 1-7.] The Motion to Stay was fully briefed. [Filing No. 94; Filing No. 103; Filing No. 108.]

On December 7, 2022, the Court granted the Motion to Stay and took the Motion for Judgment on the Pleadings under advisement. [Filing No. 112.] In doing so, the Court determined that in the event that Ms. Harris is permitted to pursue her claims in this lawsuit, she will not be permitted to pursue the claims on her own behalf, and instead may pursue them on behalf of the bankruptcy estate only. [Filing No. 112 at 14.] The Court found that there was "insufficient evidence demonstrating that Ms. Harris intentionally failed to disclose her wage claims against Anthem to the Bankruptcy Court in an effort to hide her potential recovery from creditors," and in the interest of potentially increasing the recovery to such creditors, exercised its discretion to stay this proceeding to allow Ms. Harris to amend her bankruptcy filings. [Filing No. 112 at 16-17.] However, the Court reserved ruling on the Motion for Judgment on the Pleadings until after the stay was lifted "to ensure that all of the impacts of the bankruptcy proceeding on this lawsuit are properly accounted for." [Filing No. 112 at 17.] The Court ordered this case stayed for 90 days, and further ordered Ms. Harris to "file a Motion to Lift the Stay at the close of those 90 days, or sooner if she amends her bankruptcy filings before then." [Filing No. 112 at 18.] The Court instructed Ms. Harris that, in her Motion to Lift the Stay, she "shall describe the amendments made to her bankruptcy filings and outline what, if any, impact those amendments have on this litigation and on the disposition of Anthem's Motion for Judgment on the Pleadings." [Filing No. 112 at 18.]

Ms. Harris filed an amended summary of assets and liabilities in the Bankruptcy Court on January 5, 2023. [Filing No. 125-1.] In the amended filing, Ms. Harris answered "No" to a question asking whether she had any legal interest in any "[c]laims against third parties, whether

4

or not [she had] filed a lawsuit or made a demand for payment." [Filing No. 125-1 at 7.] Under the category "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims," Ms. Harris listed a "Federal Wage Claim Settlement" in the amount of $3,510.29. [Filing No. 125-1 at 7.]

Despite having amended her bankruptcy filings, Ms. Harris did not immediately file a Motion to Lift the Stay. When the 90-day period expired on March 7, 2023, Ms. Harris still had not filed a Motion to Lift the Stay. In fact, she has never filed such a motion, despite being expressly ordered to do so by the Court. Instead, on March 14, 2023, Anthem filed its Notice of Failure to Cure Bankruptcy Defects ("Notice"). [Filing No. 125.] In response, Ms. Harris filed her Notice of Cure ("Response"). [Filing No. 127.] Anthem then filed a Reply in Support of its Notice ("Reply"). [Filing No. 131.] The Court will now consider the issues raised in the Notice, Response, and Reply, as well as the outstanding Motion for Judgment on the Pleadings.

## III.
### DISCUSSION

In its Notice, Anthem contends that "[r]ather than amend[ing] her bankruptcy filings to actually reflect the legal claims brought in this Court, [Ms.] Harris doubled down on her bad faith attempts to maintain this action for her own personal benefit" and is "still denying [in the Bankruptcy Court] that she has any pending employment lawsuits." [Filing No. 125 at 1-2 (citing Filing No. 125-1 at 7).] Anthem asserts that Ms. Harris did not disclose to the Bankruptcy Court what lawsuit resulted in her "Federal Wage Claim Settlement," but "[w]hatever case she settled, it wasn't this one." [Filing No. 125 at 2.] Anthem argues that because Ms. Harris has chosen not to even attempt to demonstrate an absence of bad faith, because she still lacks standing to pursue this action, and because she disregarded this Court's direct orders to file a Motion to Lift the Stay, she "should not be able to proceed with this litigation in any capacity," the Motion for Judgment on

5

the Pleadings should be granted, and this case should be "dismissed in its entirety." [Filing No. 125 at 2-3.]

In her Response, Ms. Harris argues that she disclosed "any potential claims and monies, which may be derived from this current action" in the Bankruptcy Court by listing them as the $3,510.29 "Federal Wage Claim Settlement." [Filing No. 127 at 1.] She asserts that she "listed the claims and potential settlement/recovery from the instant action as exempt" under Virginia law, and because no objection was filed in the Bankruptcy Court within 30 days of her amendment, the "claim was exempted and no longer constituted property of the estate" as of February 4, 2023. [Filing No. 127 at 1-2.] Ms. Harris further argues that, even if the claims are considered property of the estate, she has standing concurrent with the Bankruptcy Trustee to pursue this case on behalf of the estate. [Filing No. 127 at 2.] She contends that, because she has "cured her bankruptcy filing," the Motion for Judgment on the Pleadings should be denied as moot. [Filing No. 127 at 2.]

In its Reply, Anthem argues that Ms. Harris has "failed to cure anything," has not addressed "the fatal flaw in her bankruptcy petition," and "continues to deceive the bankruptcy court." [Filing No. 131 at 1.] Anthem points out that Ms. Harris admits that she did not initially disclose the claims underlying this lawsuit to the Bankruptcy Court, did not take any action to correct that initial failure until Anthem pointed it out, and still has yet to provide an adequate disclosure. [Filing No. 131 at 2.] Anthem argues that listing a "Federal Wage Claim Settlement," without any information identifying this lawsuit, falls short of Ms. Harris's duty to disclose assets to the Bankruptcy Court with reasonable particularity. [Filing No. 131 at 2.] In its view, "the purpose of a debtor's disclosures is, at the very least, to enable the bankruptcy trustee to determine whether to investigate further," and Ms. Harris's "cryptic and deceptive disclosure" was not sufficient to

6

fulfill her obligations under these circumstances. [Filing No. 131 at 4.] Anthem contends that "[a]s a matter of common sense and case law, bankruptcy courts will not countenance veiled attempts to obscure the true nature of a debtor's asset," and "[g]iven the passage of time, there really is no excuse for [Ms.] Harris's ambiguous and non-specific disclosure." [Filing No. 131 at 5.] Finally, Anthem points out that this case has not been settled and Ms. Harris has not explained why she characterized this lawsuit as exclusively federal and valued it at $3,510.29, when she brings claims under both state and federal law and her verified discovery responses show that she believes her claims are worth much more. [Filing No. 131 at 3-4.]

As the Court observed in its December 7, 2022 Order, "[t]he doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions." *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014). The purpose of the doctrine is "to protect the integrity of the judicial process[] by prohibiting parties from deliberately changing positions according to the exigencies of the moment." *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotations and citations omitted). It is an equitable doctrine that may be invoked by a court, at its discretion, to "prevent improper use of judicial machinery." *Id.* at 750 (internal quotations and citations omitted).

In the context of bankruptcy disclosures specifically, the Seventh Circuit has recognized that "[p]lenty of authority supports the . . . conclusion that a debtor in bankruptcy who receives a discharge (and thus a personal financial benefit) by representing that [s]he has no valuable choses in action cannot turn around after the bankruptcy ends and recover on a supposedly nonexistent claim." *Biesek v. Soo Line R. Co.*, 440 F.3d 410, 412 (7th Cir. 2006). And, although the Seventh Circuit has warned against using the doctrine of judicial estoppel to further harm creditors by

preventing the estate from recovering assets that could be used to pay the creditors, *id*. at 413, it has also acknowledged that the doctrine may be applied to bar claims where there is "undisputed evidence that [the plaintiff-debtor] intentionally concealed her claim" from the bankruptcy court, *Spaine*, 756 F.3d at 548. Specifically, the Seventh Circuit noted that where such evidence is present, it "would not be appropriate to allow [the plaintiff-debtor] to go forward with [a] case based on her reopened and amended bankruptcy" because "such a ruling would encourage debtors to conceal assets as long as possible and then, if the omission is caught, to retreat and make a quick correction." *Id*.

Although the Court concluded in its December 7, 2022 Order that there was insufficient evidence demonstrating that Ms. Harris intentionally concealed the claims underlying this lawsuit from the Bankruptcy Court, subsequent developments necessitate a different conclusion now. Despite her argument to the contrary, Ms. Harris did not specifically disclose this lawsuit to the Bankruptcy Court, even though this Court expressly gave her the opportunity to do so. She did not include in her disclosure the case name or number, or any other identifying information that would permit the Trustee or any creditor to locate this case. Furthermore, her use of the words "Federal" and "Settlement" in the disclosure are misleading to the extent that this case contains both federal and state claims and has clearly not reached a settlement. Finally, it is entirely unclear how Ms. Harris determined that $3,510.29 was the appropriate valuation of this lawsuit, and she has made no attempt to explain that calculation. Put simply, the amendment that Ms. Harris made to her bankruptcy filing is vague, arguably inaccurate, and woefully inadequate, and given her failure to provide any explanation or any evidence or argument to the contrary, the Court finds that the amendment is intentionally deceptive.

Ms. Harris's argument that her claims are no longer property of the bankruptcy estate because she listed them as exempt and no one objected misses the point. It is unclear how any interested party would discover a basis to object to the exemption given Ms. Harris's failure to include sufficient information to identify this lawsuit as the relevant asset. In any event, the Court has already determined—based in part on Ms. Harris's concession—that she may not pursue any claims in this lawsuit on her own behalf. [Filing No. 112 at 14.]

Finally, the Court notes Ms. Harris's blatant disregard for Court orders. Ms. Harris did not file a Motion to Lift the Stay as directed, either following her amendments to her bankruptcy filings or at the close of the 90-day period. And when she filed her Response after being prompted by Anthem's Notice, she submitted a paltry, two-page document that did not helpfully address any of the issues that the Court directed her to address in a Motion to Lift the Stay (nor did it contain any attempt to explain or justify her failure to follow the Court's directives).

Ms. Harris's counsel's behavior in this case has been incompetent at best, and fraudulent at worst.[1] The Court finds that this is the type of "improper use of judicial machinery" that the doctrine of judicial estoppel is intended to prevent, *New Hampshire*, 532 U.S. at 750, and the equities require that the doctrine be applied to bar Ms. Harris's claims in this case, s*ee Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 796 (7th Cir. 2013) ("To protect the integrity of the judicial process, a court [applying the doctrine of judicial estoppel] needs freedom to consider the equities of an entire case."). Accordingly, Anthem's Motion for Judgment on the Pleadings, [Filing No. 83], is **GRANTED**.

---

[1] Counsel is reminded that they are, at all times, subject to the Standards for Professional Conduct Within the Seventh Judicial Circuit, Federal Rule of Civil Procedure 11, and 28 U.S.C. § 1927. They are further advised that, should they attempt to pursue a similar class action with a different named plaintiff, their actions in this case may be relevant to the determination of whether they are capable of adequately representing any potential class.

## IV.
### CONCLUSION

Based on the foregoing, Anthem's Motion for Judgment on the Pleadings, [83], is **GRANTED**. This case is **DISMISSED WITH PREJUDICE**. All other pending motions are **DENIED AS MOOT**. Final judgment shall issue accordingly.

Date: 4/6/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**