UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ASHLEY HARRIS, *on behalf of herself,* *Nationwide FLSA Collective Plaintiffs, and* *the Class*,<br><br>  *Plaintiff,*<br><br>  vs.<br><br>THE ANTHEM COMPANIES, INC.,<br><br>  *Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)   No. 1:22-cv-00002-JMS-MJD<br>)<br>)<br>)<br>)<br>) |

**ORDER**

On April 6, 2023, the Court granted a Motion for Judgment on the Pleadings filed by Defendant The Anthem Companies, Inc. ("Anthem") and dismissed this case with prejudice, finding that the doctrine of judicial estoppel barred Plaintiff Ashley Harris's claims because she and her counsel failed to disclose the existence of this lawsuit to the Bankruptcy Court handling Ms. Harris's bankruptcy proceeding and exhibited a "blatant disregard for Court Orders." [Filing No. 133.] Following the entry of final judgment, Anthem filed a Motion for Bill of Costs, [Filing No. 135], and a Motion for Attorneys' Fees Under 28 U.S.C. § 1927, [Filing No. 136]. Ms. Harris opposes both of Anthem's Motions and filed a Motion for Reconsideration, asking the Court to reconsider its April 6, 2023 Order ("the Dismissal Order"). [Filing No. 142.] All of these Motions are ripe for the Court's review.

**I.**
**BACKGROUND**

In the operative Third Amended Complaint, Ms. Harris alleged violations of the federal Fair Labor Standards Act ("FLSA") and multiple state wage and hour laws. [Filing No. 76.] Anthem filed a Motion for Judgment on the Pleadings, arguing that Ms. Harris's claims are barred

1

by judicial estoppel because she failed to disclose the existence of this lawsuit to the Bankruptcy Court in her Chapter 13 bankruptcy proceeding and that, as a result of her bankruptcy proceeding, she lacked standing to pursue this lawsuit on her own behalf. [Filing No. 83.] Instead of responding to Anthem's motion, Ms. Harris filed a Motion to Stay, asking the Court to stay these proceedings to give her an opportunity to disclose this lawsuit to the Bankruptcy Court. [Filing No. 94.]

In an Order dated December 7, 2022 ("the Stay Order"), the Court granted the Motion to Stay, took the Motion for Judgment on the Pleadings under advisement, and stayed this proceeding for 90 days. [Filing No. 112.] In doing so, the Court determined that in the event that Ms. Harris was permitted to pursue her claims in this lawsuit, she would not be permitted to pursue the claims on her own behalf, and instead may pursue them on behalf of the bankruptcy estate only. [Filing No. 112 at 14.] The Court found that there was "insufficient evidence demonstrating that Ms. Harris intentionally failed to disclose her wage claims against Anthem to the Bankruptcy Court in an effort to hide her potential recovery from creditors," and in the interest of potentially increasing the recovery to such creditors, exercised its discretion to stay this proceeding to allow Ms. Harris to amend her bankruptcy filings. [Filing No. 112 at 16-17.] However, the Court reserved ruling on the Motion for Judgment on the Pleadings until after the stay was lifted "to ensure that all of the impacts of the bankruptcy proceeding on this lawsuit are properly accounted for." [Filing No. 112 at 17.] The Court ordered this case stayed for 90 days, and further ordered Ms. Harris to "file a Motion to Lift the Stay at the close of those 90 days, or sooner if she amends her bankruptcy filings before then." [Filing No. 112 at 18.] The Court instructed Ms. Harris that, in her Motion to Lift the Stay, she "shall describe the amendments made to her bankruptcy filings and outline

2

what, if any, impact those amendments have on this litigation and on the disposition of Anthem's Motion for Judgment on the Pleadings." [Filing No. 112 at 18.]

Ms. Harris filed an amended summary of assets and liabilities in the Bankruptcy Court on January 5, 2023. [Filing No. 125-1.] In the amended filing, Ms. Harris answered "No" to a question asking whether she had any legal interest in any "[c]laims against third parties, whether or not [she had] filed a lawsuit or made a demand for payment." [Filing No. 125-1 at 7.] Under the category "[o]ther contingent and unliquidated claims of every nature, including counterclaims of the debtor and rights to set off claims," Ms. Harris listed a "Federal Wage Claim Settlement" in the amount of $3,510.29. [Filing No. 125-1 at 7.]

Despite having amended her bankruptcy filings, Ms. Harris did not immediately file a Motion to Lift the Stay. When the 90-day period expired on March 7, 2023, Ms. Harris still had not filed a Motion to Lift the Stay. In fact, she has never filed such a motion, despite being expressly ordered to do so by the Court in the Stay Order. Instead, on March 14, 2023, Anthem filed its Notice of Failure to Cure Bankruptcy Defects ("Notice"), [Filing No. 125], to which Ms. Harris then responded by filing a Notice of Cure ("Response"), [Filing No. 127]. In its Notice, Anthem asked the Court to lift the stay, grant its Motion for Judgment on the Pleadings, and dismiss this action in its entirety.

After considering the Notice, Response, and a reply filed by Anthem, the Court issued the Dismissal Order, dismissing this case with prejudice pursuant to the doctrine of judicial estoppel based on its finding that the amendments made in the Bankruptcy Court were intentionally deceptive. [Filing No. 133.] In relevant part, the Dismissal Order stated:

> Although the Court concluded in [the Stay Order] that there was insufficient evidence demonstrating that Ms. Harris intentionally concealed the claims underlying this lawsuit from the Bankruptcy Court, subsequent developments necessitate a different conclusion now. Despite her argument to the contrary, Ms.

3

> Harris did not specifically disclose this lawsuit to the Bankruptcy Court, even though this Court expressly gave her the opportunity to do so. She did not include in her disclosure the case name or number, or any other identifying information that would permit the Trustee or any creditor to locate this case. Furthermore, her use of the words "Federal" and "Settlement" in the disclosure are misleading to the extent that this case contains both federal and state claims and has clearly not reached a settlement. Finally, it is entirely unclear how Ms. Harris determined that $3,510.29 was the appropriate valuation of this lawsuit, and she has made no attempt to explain that calculation. Put simply, the amendment that Ms. Harris made to her bankruptcy filing is vague, arguably inaccurate, and woefully inadequate, and given her failure to provide any explanation or any evidence or argument to the contrary, the Court finds that the amendment is intentionally deceptive.
>
> Ms. Harris's argument that her claims are no longer property of the bankruptcy estate because she listed them as exempt and no one objected misses the point. It is unclear how any interested party would discover a basis to object to the exemption given Ms. Harris's failure to include sufficient information to identify this lawsuit as the relevant asset. In any event, the Court has already determined—based in part on Ms. Harris's concession—that she may not pursue any claims in this lawsuit on her own behalf. [Filing No. 112 at 14.]
>
> Finally, the Court notes Ms. Harris's blatant disregard for Court orders. Ms. Harris did not file a Motion to Lift the Stay as directed, either following her amendments to her bankruptcy filings or at the close of the 90-day period. And when she filed her Response after being prompted by Anthem's Notice, she submitted a paltry, two-page document that did not helpfully address any of the issues that the Court directed her to address in a Motion to Lift the Stay (nor did it contain any attempt to explain or justify her failure to follow the Court's directives).
>
> Ms. Harris's counsel's behavior in this case has been incompetent at best, and fraudulent at worst. The Court finds that this is the type of "improper use of judicial machinery" that the doctrine of judicial estoppel is intended to prevent, *New Hampshire*, 532 U.S. at 750, and the equities require that the doctrine be applied to bar Ms. Harris's claims in this case, s*ee Grochocinski v. Mayer Brown Rowe & Maw, LLP*, 719 F.3d 785, 796 (7th Cir. 2013) ("To protect the integrity of the judicial process, a court [applying the doctrine of judicial estoppel] needs freedom to consider the equities of an entire case."). Accordingly, Anthem's Motion for Judgment on the Pleadings, [Filing No. 83], is **GRANTED**.

[Filing No. 133 at 8-9 (footnote omitted).] The Court entered final judgment the same day. [Filing No. 134.]

Anthem then filed its Motion for Bill of Costs, [Filing No. 135], and Motion for Attorney's Fees Under 28 U.S.C. § 1927, [Filing No. 136].  Ms. Harris filed her Motion for Reconsideration. [Filing No. 142.]  These Motions are all fully briefed and ripe for the Court's decision.

## II.
### MOTION FOR RECONSIDERATION

**A. Standard of Review**

"Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence." *Caisse Nationale de Credit Agricole v. CBI Indus., Inc.*, 90 F.3d 1264, 1269 (7th Cir. 1996) (internal quotations and citation omitted).  "A manifest error is not demonstrated by the disappointment of the losing party.  It is the wholesale disregard, misapplication, or failure to recognize controlling precedent." *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (internal quotations and citation omitted).  A motion for reconsideration may be granted where "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990) (citation omitted).  "A further basis for a motion to reconsider would be a controlling or significant change in the law or facts since the submission of the issue to the Court."  *Id.* (citation omitted).  "Such problems rarely arise and the motion to reconsider should be equally rare." *Id.* (citation omitted).

"Motions to reconsider 'are not replays of the main event.'" *Dominguez v. Lynch*, 612 Fed. App'x 388, 390 (7th Cir. 2015) (quoting *Khan v. Holder*, 766 F.3d 689, 696 (7th Cir. 2014)).  A motion to reconsider "is not an appropriate forum for rehashing previously rejected arguments or arguing matters that could have been heard during the pendency of the previous motion." *Caisse Nationale*, 90 F.3d at 1270.  Arguments that the district court has already considered and rejected,

5

and any contention that the district court "was in error on the issues it already considered[,] should be directed to the court of appeals," not raised in a motion for reconsideration. *United States v. ITT Educ. Servs., Inc.*, 2012 WL 266943, at *8 (S.D. Ind. Jan. 30, 2012).

### B. Discussion

In support of her Motion for Reconsideration, Ms. Harris argues that, although the amendment she made to her bankruptcy filing "was defective in failing to identify this case and suggesting that it was settled," that "error was made in good faith and did not form part of some broader pattern of bad faith litigation." [Filing No. 143 at 1.] She incorporates by reference the arguments made in her Response in Opposition to Defendant's Motion for Sanctions and Motion for Bill of Costs, [*see* Filing No. 143 at 1], in which she argues that neither she nor her counsel engaged in a pattern of misconduct, [Filing No. 141 at 2-3]. Ms. Harris and her counsel both submitted declarations stating that they relied on Ms. Harris's bankruptcy attorney, Laura Alridge, to amend the bankruptcy filings and provided her with information about this case but never "asked Ms. Alridge [the estimate of recoverable damages in this case] as a 'Federal Wage Claim Settlement'" on the bankruptcy filings. [Filing No. 141 at 3-6; Filing No. 141-1; Filing No. 141-4.] Ms. Harris and her counsel both acknowledge that "[i]n retrospect, it is clear . . . that the amended bankruptcy filing should have identified [Ms. Harris's] claim through the name and docket number of the case at bar" and that this action "had not been settled and include[s] a state claim as well as a federal one," but they contend that "at the time, it struck [Ms. Harris's] counsel as eminently reasonable to defer to the accumulated expertise of a specialized bankruptcy attorney," and so counsel "mistakenly failed to second-guess how Ms. Alridge entered [Ms. Harris's] claim on the revised filings, assuming she could be counted upon to appropriately manage a routine matter that was within her specialized purview." [Filing No. 141 at 5.] Ms. Harris

6

contends that the "amended filing was deficient, concededly, but there is no basis for the suspicion that it was calculated by [Ms. Harris's] counsel to somehow shield [Ms. Harris] from scrutiny in bankruptcy, a process divorced from the instant lawsuit," especially given that counsel attempted, unsuccessfully, to contact the Bankruptcy Trustee to alert them of the existence of this lawsuit. [Filing No. 141 at 7.] Ms. Harris asserts that because there is insufficient evidence of intentional deception, and because "[she] and [her] counsel were doing their utmost to properly amend [her] bankruptcy filings," the Court should reconsider the Dismissal Order and reopen this case. [Filing No. 143 at 2-3.] In addition, Ms. Harris contends that she did not have an opportunity prior to the Court's issuance of the Dismissal Order to present evidence that her inadequate amendment was the result of good faith error, and accordingly the Court's conclusion that the amendment was intentionally deceptive was outside the adversarial issues presented in this case. [Filing No. 143 at 3-4.] Ms. Harris argues that the claims asserted in this action are "indisputably meritorious" and that dismissal with prejudice is too harsh a sanction "where it is clearly possible to correct the problems that led to dismissal." [Filing No. 143 at 5-6.]

In response, Anthem argues that Ms. Harris has not presented any new information justifying reconsideration and that she had several opportunities to explain her alleged good faith but did not take advantage of them. [Filing No. 145 at 1-3.] Specifically, Anthem points out that Ms. Harris: (1) sought and was granted a stay of this case to amend her bankruptcy filings, but instead of properly amending, she attempted to exempt her claim from the bankruptcy estate so that she could pursue it in her own name, despite the Court's ruling to the contrary; (2) failed to file a motion to lift the stay explaining the impact of her bankruptcy amendment, even though the Court expressly ordered her to do so; and (3) failed to acknowledge and explain the inadequacy of her amendment in her Response to Anthem's Notice. [Filing No. 145 at 2-3.] Anthem contends

that Ms. Harris "did not do what she said she would, did not do what she was ordered to do, missed her deadline, and then engaged in further bad faith," and therefore reconsideration is not warranted. [Filing No. 145 at 3.]

In reply, Ms. Harris reiterates her arguments that neither she nor her counsel acted in bad faith, engaged in any misconduct, or attempted to deceive this Court or the Bankruptcy Court. [Filing No. 147 at 1-5.] She argues that the Court should reopen this case and decide it on the merits. [Filing No. 147 at 6.] Ms. Harris also filed a Notice of Cure of Bankruptcy Petition, showing that she amended her bankruptcy filings on June 12, 2023 to reflect this case as a "contingent and unliquidated claim[]" of an unknown value. [Filing No. 146; Filing No. 146-1.]

The problems in this case began with Ms. Harris's failure to disclose to the Bankruptcy Court the existence of the claims she asserts in this lawsuit, and instead of curing that failure, she and her counsel compounded it. As the Court previously explained in the Stay Order and reemphasized in the Dismissal Order, "[t]he doctrine of judicial estoppel prevents litigants from manipulating the judicial system by prevailing in different cases or phases of a case by adopting inconsistent positions," *Spaine v. Cmty. Contacts, Inc.*, 756 F.3d 542, 547 (7th Cir. 2014), and is designed "to protect the integrity of the judicial process[] by prohibiting parties from deliberately changing positions according to the exigencies of the moment," *New Hampshire v. Maine*, 532 U.S. 742, 749-50 (2001) (internal quotations and citations omitted). It is clear that Ms. Harris's failure to disclose her claims to the Bankruptcy Court is an error that prevents her from asserting those claims in this action pursuant to the doctrine of judicial estoppel. However, relying on express direction from the Seventh Circuit in *Spaine* regarding the application of the doctrine of judicial estoppel in the context of bankruptcy disclosures, the Court was initially willing to excuse Ms. Harris's error absent evidence of bad faith or intentional deception and grant her an opportunity

8

Case 1:22-cv-00002-JMS-MJD   Document 148   Filed 08/11/23   Page 9 of 18 PageID #: 8816

to correct the error so that she could proceed in this case. But Ms. Harris did not take advantage of that opportunity.

In the Stay Order, the Court directed Ms. Harris to: (1) amend her bankruptcy filings to properly disclose her claims to the Bankruptcy Court; and (2) after doing so, file a motion to lift the stay in this case, explaining "what, if any, impact those amendments have on this litigation and on the disposition of Anthem's Motion for Judgment on the Pleadings." [Filing No. 112 at 18.] Instead of doing either of those things, Ms. Harris: (1) made an amendment to her bankruptcy filing that the Court has already found (and Ms. Harris now acknowledges) was "vague, arguably inaccurate, and woefully inadequate," [Filing No. 133 at 8]; (2) ignored her obligation to file a motion to lift the stay; and (3) in response to Anthem's filings, offered no evidence or argument addressing any of the issues outlined in the Stay Order, explaining her failure to file Court Orders, or justifying her attempted amendment to her bankruptcy filings. With that information before it, the Court reasonably concluded that Ms. Harris's failure to correct the deficiency in her bankruptcy filings—after being expressly advised by the Court why the deficiency was significant and what consequences it would have if not corrected—constituted intentional deception and "improper use of the judicial machinery" requiring application of the doctrine of judicial estoppel and dismissal of this case. This conclusion was underscored by the fact that, despite the Court's explicit pronouncement in the Stay Order that Ms. Harris could not pursue her claims on her own behalf, she attempted through her erroneous amendment to exempt her claims from the bankruptcy estate, apparently in an effort to return to this Court to pursue the claims for her own benefit.

Ms. Harris now, for the first time, attempts to persuade the Court that her failures were unintentional. But Ms. Harris cannot use a Motion for Reconsideration to present evidence that she could have already presented to the Court. *See, e.g.*, *Cincinnati Life Ins. Co. v. Beyrer*, 722

9

F.3d 939, 956 (7th Cir. 2013) ("Simply put, a party may not use a motion for reconsideration to introduce new evidence that could have been presented earlier.") (cleaned up).  And the Court rejects as patently ridiculous any contention that Ms. Harris did not previously have an opportunity to address these matters.  The Court expressly directed Ms. Harris to explain her bankruptcy amendments in the motion to lift the stay that she was supposed to file.  Further, when Anthem challenged the adequacy of the amendment in its Notice, Ms. Harris had ample opportunity to address that in her Response.  Although she contends that she did not address the issue of good faith in her Response because she did not believe it to be relevant, [*see* Filing No. 143 at 3-5], it is entirely unclear to the Court how she reached that conclusion given the Court's discussion in the Stay Order of intentional deception being relevant to the doctrine of judicial estoppel, [Filing No. 112 at 15-17], and Anthem's repeated assertions that Ms. Harris and her counsel were acting in bad faith, [*see, e.g.*, Filing No. 125 at 2 (Anthem's Notice, criticizing Ms. Harris for not "at least attempt[ing] to demonstrate an absence of 'bad faith'")].  Accordingly, Ms. Harris had an opportunity to address these matters prior to the Dismissal Order, and her newly asserted evidence and arguments do not provide a basis for reconsideration of the Dismissal Order.

Even if considered, the new arguments asserted in the Motion for Reconsideration are not persuasive.  Instead of accepting responsibility for the inadequate nature of the bankruptcy amendments, Ms. Harris's counsel attempts to shift the blame to the bankruptcy attorney.  Although the Court acknowledges that bankruptcy law is specialized, complex, and potentially confusing to someone with no expertise in that area, the Court finds that there is no credible basis for counsel's assertions that, despite their lack of familiarity with bankruptcy law, they believed it sufficient that the amendment: (1) answered "No" to a question asking whether Ms. Harris had any legal interest in any "[c]laims against third parties, whether or not [she had] filed a lawsuit or made a demand

for payment," even though the answer to that question was "Yes"; and (2) purportedly characterized this action as a "Federal Wage Claim Settlement," even though the case was not settled and also contained state law claims.  Specialized knowledge of bankruptcy law is not required to understand the inadequacies of these statements, and in any event, reasonably competent counsel would have endeavored to gain an understanding of the situation sufficient to enable them to represent Ms. Harris and to fulfill their obligation imposed by the Stay Order to inform this Court of the impact the amendments might have on this proceeding.  Finally, the fact that Ms. Harris appropriately amended her bankruptcy filing on June 12, 2023—97 days after the initial deadline of March 7, 2023 set by the Court in the Stay Order—does not change the result.  Her efforts in that regard are simply too little, too late.

      The Court reaffirms its findings that Ms. Harris's counsel has acted in bad faith and abused the judicial process by: (1) failing to timely and properly amend Ms. Harris's bankruptcy filings to cure the defects pointed out by Anthem and by the Court; (2) failing to comply with Court Orders; and (3) failing to adequately address or attempt to justify these mistakes when prompted.  For reasons already explained in the Dismissal Order, those findings justify application of the doctrine of judicial estoppel to bar this case, and Ms. Harris has not demonstrated that reconsideration of that conclusion is appropriate.  The Court acknowledges that dismissal with prejudice is a harsh sanction, but aside from the doctrine of judicial estoppel, the Court has "the inherent authority to manage judicial proceedings and to regulate the conduct of those appearing before it, and pursuant to that authority may impose appropriate sanctions to penalize and discourage misconduct." *Ebmeyer v. Brock*, 11 F.4th 537, 546 (7th Cir. 2021) (internal quotations and citation omitted).  And although the sanction of dismissal with prejudice "must be infrequently resorted to by district courts in their attempts to control their dockets," sanctions are appropriate upon "a finding that the

11

culpable party willfully abused the judicial process or otherwise conducted the litigation in bad faith." *Id.* (internal quotations and citations omitted). That is the case here.

For the foregoing reasons, Ms. Harris's Motion for Reconsideration, [Filing No. 142], is **DENIED**.

### III.
### MOTION FOR ATTORNEYS' FEES

#### A. Standard of Review

28 U.S.C. § 1927 provides that "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." A court has discretion to impose sanctions under § 1927 when an attorney has: (1) "acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice"; (2) "pursued a claim that is without a plausible legal or factual basis and lacking in justification"; or (3) "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Grp., Ltd. v. Medline Indus., Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal quotations and citations omitted, alteration original). The purpose of § 1927 "is to deter frivolous litigation and abusive practices by attorneys, and to ensure that those who create unnecessary costs also bear them." *Kapco Mfg. Co. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th Cir. 1989) (internal citation omitted).

#### B. Discussion

Anthem seeks attorneys' fees under § 1927 "that were incurred due to [Ms. Harris's] counsel's bad faith litigation tactics following the [Stay Order]." [Filing No. 136; Filing No. 137 at 1.] Anthem outlines various actions by Ms. Harris and her counsel, asserting that these actions demonstrate that "[t]his case was pursued in an unreasonable and frivolous manner from the start."

12

[Filing No. 137 at 3-5.] Finally, Anthem points out that "this Court has not yet had an opportunity to provide guidance about which fees Anthem could recover, if any," and asks for an "extension to file a specific Motion for Fees with an itemized and exemplified bill." [Filing No. 137 at 5-6.]

In response, Ms. Harris makes the arguments already addressed above regarding her and her counsel's lack of bad faith. [Filing No. 141 at 2-9.] She contends that Anthem has not identified any motivation she might have for multiplying the proceedings unreasonably or vexatiously, that "it is obvious that [her] counsel had every interest in amending the bankruptcy filings appropriately and thereby avoiding any unnecessary proceedings before this Court," that the bankruptcy attorney's "misbegotten amendment to [the] bankruptcy filing is not the product of a conspiracy but manna from heaven gratuitously showered on [Anthem], allowing it [to] bypass the merits of the case so as to seek dismissal on the basis [of] a third party's mistake," and that "[t]his error does not magically transmogrify all the litigation that preceded it into a pattern of vexatious conduct." [Filing No. 141 at 8-9.] Ms. Harris argues that bad faith for purposes of § 1927 requires a showing of reckless indifference, and Anthem "cannot explain how [Ms. Harris's] counsel could possibly have been indifferent to whether [the] bankruptcy filings were correctly amended, given that amending them correctly was patently in the best interest of [Ms. Harris] and [her] counsel." [Filing No. 141 at 9.] She also asserts that Anthem was not prejudiced by her delay in moving to lift the stay. [Filing No. 141 at 10.] Finally, Ms. Harris argues that the Court should deny Anthem's motion because it does not specify what fees are sought or how any fees are attributable to her counsel's allegedly vexatious conduct. [Filing No. 141 at 10-11.]

In reply, Anthem reiterates its arguments and asserts that "the amended bankruptcy schedule was designed with the specific hope that [Ms. Harris] could pursue the claims in this lawsuit for her own benefit, notwithstanding the Court's Order to the contrary." [Filing No. 144 at

13

2-3.] Anthem contends that "[t]his entire phase of the litigation could have been avoided had [Ms. Harris] simply dismissed her case once it became apparent that she could not pursue her claims for her own personal benefit," but "[i]nstead, her attorneys advised her wrongly that this Court's Order prohibiting her from pursuing her claims for her personal benefit could be ignored, and devised a scheme to try to revive her claims" so that they could "fulfill their aspirations of pursuing a nationwide class." [Filing No. 144 at 4.]

      Given the Court's above discussion of Ms. Harris's Motion for Reconsideration, the Court easily finds that attorneys' fees under § 1927 are recoverable in this case because Ms. Harris's counsel "acted in an objectively unreasonable manner by engaging in serious and studied disregard for the orderly process of justice" and "pursue[d] a path that a reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Jolly Grp., Ltd.*, 435 F.3d at 720. Specifically, in failing to file a motion to lift the stay as ordered, in making obviously inadequate amendments to the bankruptcy filings, and in unreasonably attempting to justify the inadequate amendments when no justification existed, Ms. Harris's counsel has unreasonably and vexatiously protracted this litigation. Ms. Harris's counsel essentially contend that they had no motivation to protract this litigation and it was not in their interest to do so, and therefore they should not be required to pay the related fees. The Court agrees to the extent that it can discern no good faith, reasonable, or logical explanation for counsel's conduct, but that hardly weighs against awarding fees under § 1927. Counsel's failures in this case are so significant and inexplicable that it requires no great leap in logic to arrive at the conclusion that, at worst, the failures were intentional and designed to circumvent the Court's Orders and allow Ms. Harris to proceed in this case on her own behalf.

Accordingly, Anthem's Motion for Attorneys' Fees is **GRANTED** to the extent that the Court finds that Anthem is entitled to recover reasonable attorneys' fees from Ms. Harris's counsel, Lee Litigation Group, PLLC, relating to: (1) the preparation and filing of the Notice, [Filing No. 125], and supporting reply, [Filing No. 131]; and (2) the preparation and filing of Anthem's response to Ms. Harris's Motion for Reconsideration, [Filing No. 145]. Anthem shall have until **September 15, 2023** to file a separate motion demonstrating the amount of fees it seeks in connection with these matters. Any response or reply shall be filed in accordance with the deadlines established in Local Rule 7-1(c)(3).

## IV.
### MOTION FOR BILL OF COSTS

**A. Standard of Review**

Federal Rule of Civil Procedure 54(d)(1) states that, unless a federal statute, rule, or court order provides otherwise, costs should be awarded to the "prevailing party." The costs recoverable under Rule 54(d)(1) are listed in 28 U.S.C. § 1920, *see Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997), and include "[f]ees for printed or electronically recorded transcripts necessarily obtained for use in the case," 28 U.S.C. § 1920(2).

"There is a presumption that the prevailing party will recover costs, and the losing party bears the burden of an affirmative showing that taxed costs are not appropriate." *Lange v. City of Oconto*, 28 F.4th 825, 845 (7th Cir. 2022) (quoting *Richardson v. Chi. Transit Auth.*, 926 F.3d 881, 893 (7th Cir. 2019)). "This presumption 'is difficult to overcome' and therefore, 'the district court's discretion is narrowly confined—the court must award costs unless it states good reasons for denying them.'" *Richardson*, 926 F.3d at 893 (quoting *Weeks*, 126 F.3d at 945). However, the party seeking costs must demonstrate that the costs are both reasonable and necessary. *Little v. Mitsubishi Motors N. Am., Inc.*, 514 F.3d 699, 702 (7th Cir. 2008).

15

### B. Discussion

Anthem seeks $4,703.25 in costs relating to the taking of depositions. [Filing No. 135; Filing No. 135-1; Filing No. 135-2.] Specifically, that amount includes a transcript and video of Ms. Harris's deposition, as well as a transcript of the deposition of Sharon K. Gravens. [Filing No. 135-3 at 3.] Anthem argues that these costs were "reasonably necessary for the defense of this litigation." [Filing No. 135-2 at 4.]

In response, Ms. Harris argues that the depositions for which Anthem seeks costs have "absolutely no connection with any of the conduct that [Anthem] alleges is sanctionable." [Filing No. 141 at 10.] She further argues that an award of costs is not appropriate in this case because the FLSA and the Virginia Minimum Wage Act, under which Ms. Harris's claims are brought, provide only for the recovery of costs by a prevailing plaintiff, not by any prevailing party. [Filing No. 141 at 10-11.]

In reply, Anthem argues that it should be awarded costs because Ms. Harris "did not provide any reason, much less a 'good reason,' to justify denying an award of costs under Section 1920." [Filing No. 144 at 1-2.]

The fee-shifting provision of the FLSA provides that a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). The Seventh Circuit has observed that this "provision refers only to a prevailing plaintiff, and says nothing of a prevailing defendant," *Mach v. Will Cnty. Sheriff*, 580 F.3d 495, 501 (7th Cir. 2009) (internal citation omitted), which "strongly suggests by negative implication that it precludes awarding [attorney's] fees to a prevailing defendant," *E.E.O.C. v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 882 (7th Cir. 1994). Instead, attorneys' fees are only available to a prevailing defendant if the plaintiff

16

acted in bad faith. *O & G Spring & Wire*, 38 F.3d at 882 (citing cases). "Exactly what constitutes bad faith has been the subject of some uncertainty[,]" but it includes "harassment, unnecessary delay, needless increase in the cost of litigation, willful disobedience, and recklessly making a frivolous claim," and the Seventh Circuit has looked to "the similar context of 28 U.S.C. § 1927" for guidance. *Mach*, 580 F.3d at 501.

Here, Rule 54 creates a presumption that Anthem, as the prevailing party, is entitled to recover its costs "[u]nless a federal statute. . . provides otherwise." Fed. R. Civ. P. 54(d)(1). The FLSA provides otherwise. For the same reason the Seventh Circuit has concluded that a prevailing defendant may not recover attorney's fees in an FLSA action unless the plaintiff has acted in bad faith, the Court finds that Anthem, as the prevailing Defendant, may not recover costs absent a showing that Ms. Harris acted in bad faith. As already discussed in depth above, Ms. Harris and her counsel have acted in bad faith in this litigation. Accordingly, the Court finds that Anthem may recover costs.

Ms. Harris makes no argument that the costs Anthem seeks are not reasonable or necessary. Accordingly, the Court **GRANTS** Anthem's Motion for Bill of Costs, [Filing No. 135], and awards Anthem $4,703.25 in costs.

## V.
### CONCLUSION

Based on the foregoing, the Court makes the following rulings:

- Ms. Harris's Motion for Reconsideration, [142], is **DENIED**;

- Anthem's Motion for Attorneys' Fees Under 28 U.S.C. § 1927, [136], is **GRANTED** to the extent that the Court finds that Anthem is entitled to recover reasonable attorneys' fees from Ms. Harris's counsel, Lee Litigation Group, PLLC, relating to: (1) the preparation and filing of the Notice, [Filing No. 125], and supporting reply, [Filing No. 131]; and (2) the preparation and filing of Anthem's response to Ms. Harris's Motion for Reconsideration, [Filing No. 145]. Anthem shall have until **September 15, 2023** to file a separate motion demonstrating the amount of fees it seeks in connection with

these matters. Any response or reply shall be filed in accordance with the deadlines established in Local Rule 7-1(c)(3); and

- Anthem's Motion for Bill of Costs, [135], is **GRANTED** and Anthem is awarded $4,703.25 in costs.

Date: 8/11/2023

*[Signature]*

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**